**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUN 30 2017**

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CIVIL ACTION NUMBER: _____

**LEON D. BARROW,**

     **Plaintiff,**

v.

**PATRICK FIRMAN,** In His Individual and Official Capacity as Sheriff, in and for, the Denver Sheriff Department;

**CHIEF OLIVA,** In His Individual and Official Capacity as Chief Officer, in and for, the Denver County Jail;

**RICK GUERRERO,** In His Individual and Official Capacity as Major Officer, in and for, the Denver County Jail;

**CAPTAIN JURANEK,** In His Individual and Official Capacity as Captain Officer, in and for, the Denver County Jail;

**CAPTAIN ROLANDO,** In His Individual and Official Capacity as Captain Officer, in and for, the Denver County Jail;

**CAPTAIN HALL,** In His Individual and Official Capacity as Captain Officer, in and for, the Denver County Jail;

**SERGEANT ANDERSON,** In His Individual and Official Capacity as Sergeant Officer, in and for, the Denver County Jail;

**SERGEANT BOWEN,** In His Individual and Official Capacity as Sergeant Officer, in and for, the Denver County Jail;

**DOCTOR CRUM,** In His Individual and Official Capacity as Medical Director, in and for, the Denver County Jail; and

**DOCTOR CHRISTIAN STOB,** In His Individual and Official Capacity as Medical Physician, in and for, the Denver County Jail,

     **Defendants.**

---

## PRISONER COMPLAINT

---

## JURY TRIAL DEMANDED

---

## A.    PARTIES:

1.  Leon D. Barrow, DSD # 0000753952, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108.

2.  Patrick Firman, Sheriff, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

3.  Chief Oliva, Chief Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

4.  Rick Guerrero, Major Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

5.  Captain Juranek, Captain Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

6.  Captain Rolando, Captain Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

7.  Captain Hall, Captain Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

8.  Sergeant Anderson, Sergeant Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box 1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

9.  Sergeant Bowen, Sergeant Officer, Denver County Jail (DCJ), 10500 Smith Road, P.O. Box

1108, Denver, Colorado 80201+1108. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

**10.** Doctor Peter Crum, Medical Director, Denver County Jail (DCJ), 777 Bannock Street, Denver, Colorado 80204. This Defendant is acting Medical Director for both the Denver Detention Center and the Denver County Jail. He is employed by the Denver Health Medical Center. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

**11.** Doctor Christian Stob,  Medical Physician, Denver County Jail (DCJ), 777 Bannock Street, Denver, Colorado 80204. This Defendant is acting Medical Doctor for both the Denver Detention Center and the Denver County Jail. He is employed by the Denver Health Medical Center. At the time the claims alleged in this Complaint arose, this Defendant was acting under color of state law.

### B.    JURISDICTION:

**1.** I assert jurisdiction over my Civil Rights claims pursuant to:

28 U.S.C. §§ 1331and 1343; 42 U.S.C. § 1983.

**2.** I assert jurisdiction pursuant to the following additional and/or alternative statutes:

42 U.S.C. §§12,101-12,213 (2000); 29 U.S.C. § 794; and United States Constitution, Amendments I (religion); VIII (cruel and unusual punishment); and XIV (Due Process Clause and/or the Equal Protection Clause), U.S.C.

### C.    NATURE OF THE CASE:

Mr. Leon D. Barrow, appearing *in propria persona,* brings this instant 42 U.S.C § 1983 Action, pursuant to the Americans with Disabilities Act of 1990 (hereinafter the: "ADA" or the "Act of 1990"); the Rehabilitation Act of 1973 (hereinafter the: "Rehab. Act" or the "Act of 1973"); and the United States Constitution, Amendments VIII and XIV, U.S.C. The meritorious allegations have been brought against select Deputies and Officers of the Denver Sheriff's Department

(hereinafter the: "DSD"), which are under contract with, and in alliance with, Medical Staff of the Denver Health Medical Center (hereinafter the: "DHMC")[1] to provide medical treatment at the Denver County Jail (hereinafter the: "DCJ").

During a previous period of incarceration at the Arapahoe County Jail (hereinafter: "ACJ"), the Plaintiff was diagnosed with Degenerative Disc Disease (hereinafter: "DDD").[2] In March 2015, a Magnetic Resonance Image (hereinafter: "MRI") revealed that the Plaintiff was suffering from Scoliosis, Spondylosis, and Disc Degeneration in the Lumbar spine vertebral areas of L5-S1. While at ACJ, the plaintiff's medical needs was determined to be serious by spine medicine physicians. Subsequently, these previous spinal injuries have also been diagnosed by multiple physicians as requiring surgical intervention and post operative treatment. On October 31, 2016, the Plaintiff had an L5-S1 Spinal Fusion and Lamenctomy performed by the Spine Institute at the Swedish Medical Center in Englewood, Colorado.[3]

Defendants from the DSD, through their personal involvements, and their actual and collective knowledge, were involved in wrongful conduct which caused Plaintiff undue pain and suffering, as a result of deliberate indifference to the Plaintiff's serious medical needs. In concert with DSD Deputies, DCJ Medical Staff members violated Plaintiff's personal Rights, protected under the United States Constitution, Amendments VIII and XIV, U.S.C. by: (1) failure to provide medical care by terminating a previously prescribed treatment plan issued by Orthopedic Specialist; (2) by unduly canceling numerous medical appointments that were previously scheduled; (3) by denying necessary treatment for the Plaintiff's previously diagnosed DDD of the spine; (4) deliberately falsifying official medical documents in order to support denial of the Plaintiff's serious medical treatment after numerous MRI testing results explicitly determined that the Plaintiff had suffered further changes to his spinal areas identified as: C4-5; C5-6; L2-3; L3-4; L4-5; which were not previously diagnosed; and (5) deliberately falsifying official medical documents in order to support the removal of the Plaintiff from general population to 23-hour lock-down.

---

1   The DHMC receives funding from: (1) the Affordable Care Act; (2) Medicaid; and (3) Medicare.

2   The claims as lodged herein stem from the period of incarceration while at the DCJ beginning on November 21, 2016. The term imposed was for a 2-year period of incarceration to the DCJ.

3   This treatment that was rendered upon the Plaintiff, occurred while the Plaintiff was *not* incarcerated at either the ACJ or the DCJ. Thus, the needed treatment was started at this juncture.

Additionally, the DCJ has a mutual contract with, and/or is in alliance with: **(1)** the Denver Community Reentry Project (hereinafter: "CRP");[4] **(2)** the Denver Mental Health Center (hereinafter: "DMHC");[5] and **(3)** the Substance Abuse Program.[6] The Plaintiff was denied the opportunity to partake in educational, religious, and rehabilitative services, programs, and activities that are afforded to other persons that are ***not*** being housed within Building Four at the DCJ.[7] The Plaintiff was not being housed in Building Four at the DCJ for punitive and/or administrative reasons. The Plaintiff was being housed in Building Four for medical reasons.

## D.    CAUSE OF ACTION

The Plaintiff *"incorporates by reference"* all facts and claims disclosed within the immediate below within claim two, as all facts herein stated are intrinsically intertwined:

### 1.    CLAIM ONE:

### Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973:

### Deliberate Indifference to Plaintiff's Serious Medical Needs Under the Eighth Amendment:

**Supporting Facts:**

1.  During a previous period of incarceration at the Arapahoe County Jail (hereinafter: "ACJ"), the Plaintiff was diagnosed with DDD.

2.  In March of 2015, a MRI revealed that the Plaintiff was suffering from Scoliosis, Spondylosis, and Disc Degeneration in the Lumbar vertebral areas of L5-S1 of the spine.

---

4  CRP is "funded by the City and County of Denver's Crime Prevention CRP and Control Commission."

5  DMHC is funded by Federal Grants, at least in part.

6  This program is funded by Federal Grants, at least in part.

7  Building Four at the DCJ is a mixed classification unit that houses: **(1)** punitive segregation; **(2)** administrative segregation; and **(3)** medical patients that require medical observation. Inmates placed in Building Four are kept under 23-hour lock-down in a small cell; whereas 24D of the DCJ allows more time out of the living quarters and are dormitory type living quarters, which have a given 17-hours of free time to the individual housed therein.

3.  The previous spinal injuries have been diagnosed by multiple physicians as requiring surgical intervention and remedial treatment.

4.  The Plaintiff's condition of DDD of his spine is a disability within the ambit of the ADA.

5.  On October 31, 2016, the Plaintiff had a L5-S1 Spinal Fusion and Lamenctomy performed by the Spinal Institute, at the Swedish Medical Center in Englewood, Colorado. **See:** EXHIBIT: **1** (Spine Institute Report) (attached hereto).

6.  On November 21, 2016, the Plaintiff was remanded into the custody of the DSD to begin to serve a 24 month sentence.

7.  The Plaintiff was placed in the DDC jail's infirmary for medical purposes.[8] **See:** EXHIBIT: **2** (dated: 11/22/2016, time: 0033 hours) (form: CJ99) (attached hereto).

8.  On December 05, 2016 at 1221 hours, the Plaintiff was initially cleared by Orthopedic Specialist, Timothy G. Russell, M.D., for a transition from the 3-Medical Unit into general population of the DDC.[9] **See:** EXHIBIT: **3** (Dr. Russell's Full Care Plan) (attached hereto).

9.  The actual order for the transfer was issued by Defendant Stob at 1554 hours on the same day as the order of clearance on December 05, 2016 (**cf.:** ¶ 7 above). **See:** EXHIBIT: **4** (Stob's Progress Note) (attached hereto).

10. On December 05, 2016 the Plaintiff was transferred from 3-Medical Unit to the general population dormitory identified as 5H of the DDC. **See:** EXHIBIT: **5** (form: CJ99) (attached hereto).

11. Plaintiff remained in general population dormitory 5H at the DDC until December 8, 2016.

12. On December 08, 2016 the Plaintiff was transferred to the DCJ.

---

8   The location of the Plaintiff's placement is identified as 3-Medical Unit.

9   This Doctor is **_not_** a Defendant in this Action.

**13.** Upon the arrival at the DCJ on December 08, 2016, the Plaintiff was medically screened by Registered Nurse *Paul*.[10]

**14.** On the same day as having been interviewed by Nurse *Paul,* the Plaintiff was also interviewed by the DCJ classifications department and was ultimately cleared to be housed in general population of the DCJ, identified as dormitory 24D.[11]

**15.** Dr. Russell's full care instructions "okay" Plaintiff to transition to general population and encouraged Plaintiff to walk as much as possible. <u>**See:**</u> EXHIBIT: **3**.

**16.** While in general population, Plaintiff adhered to Dr. Russell's full care plan by ambulating as much as physically tolerable, walking laps around the *"day room"* of the dormitory as well as the recreational area of 24D.

**17.** While in dormitory 24D, the Plaintiff experienced pain to his entire spinal area, and swelling to the surgical site. This prompted the Plaintiff to file multiple Medical Request Form(s) (hereinafter: "kite" or "kites") to be evaluated by DCJ medical staff. <u>**See:**</u> EXHIBITS: **6.1; 6.2; 6.3; 6.4;** and **6.5** (medical kites, nos.: 16-17953; 16-17954; 16-17879; 16-17958; and 16-17897) (respectively) (attached hereto).

**18.** On December 15, 2016, the Plaintiff again met with Defendant Stob. The purpose of this appointment was to discuss symptoms, pain management, and Plaintiff's improperly assembled walker and defective wheelchair.[12] <u>**See:**</u> EXHIBITS: **7.1** (progress note, dated: 11/28/2016, 1430 hours) (attached hereto) and **7.2** (progress note, dated: 12/15/2016, 0955 hours) (attached hereto).

**19.** During the December 15, 2016 appointment, Plaintiff inquired through Defendant Stob if the *post*-operative MRI images taken after the October 31, 2016 L5-S1 Spinal Fusion (**cf.:** ¶

---

10 This Nurse's name is *Paul* (last name unknown at this juncture). This Nurse is <u>***not***</u> a Defendant in this Action.

11 Dormitory 24D at the DCJ offers church services, educational classes, legal library access, and has an enclosed recreational area with a basketball area and a small area for walking if so desired.

12 As of the date of the filing of this instant Complaint, the Plaintiff is still presently having to endure the walker as improperly assembled by the medical staff at the DCJ is inoperable.

4 above), were compared with the MRI images taken while an inpatient at DHMC's Correctional Care Medical Facility (hereinafter: "CCMF"), *after* sustaining traumas to his neck and back.[13]

20. During the December 15, 2016 appointment, Defendant Stob became visibly indignant terminating the first of many appointments, with prejudice, ***without*** addressing the Plaintiff's serious medical concerns. This early termination left the Plaintiff with dangerous assistive equipment (**cf.:** ¶ 18 and n. 12 above).

21. Upon the Plaintiff's review and comparison of both sets of records, the Plaintiff questioned disparities between DHMC's November 25, 2016 complete spine MRI; which encompassed the Cervical, Thoracic, and Lumbar regions, and the falsifications of the Progress Notes published by Defendant Stob.[14]

22. The Plaintiff's MRI impressions clearly state degenerative and post surgical changes in the Plaintiff's Cervical and Lumbar spine regions since the date of incarceration on November 21, 2016 to the DDC.

23. On March 16, 2017, the Plaintiff raised the inconsistencies within Defendant Stob's published Progress Reports regarding the Plaintiff; this Defendant then terminated the appointment ***without addressing*** the Plaintiff's serious medical concerns as indicated in the Plaintiff's medical records and the medical kites which were *ante* to the appointment, thereby perpetuating the cycle of denials regarding the Plaintiff's medical care.[15]

---

13 For clarification: the MRI images were taken at the CCMF facility of the DHMC on: November 21, 2016; November 24, 2016; and November 25, 2016. **See:** EXHIBITS: **8.1; 8.2;** and **8.3** (respectively) (MRI impressions) (attached hereto). These are the MRI images that the Plaintiff was inquiring about for the comparative analysis at this appointment. However, there was one other MRI image taken of the Plaintiff at the University Hospital (hereinafter: "UH") in Aurora, Colorado, on: December 17, 2016. **See:** EXHIBIT: **9** (UH Discharge Instructions) (attached hereto).

14 Several of Defendant Stob's Progress Notes carry over this conflicting information regarding the ***falsely published*** negative changes in Plaintiff's spinal areas. **Cf.:** EXHIBITS: **7.1** and **7.2**.

15 Defendant Stob would continue to falsely note in his published Progress Reports of the Plaintiff's claims of ***pain in his neck and back regions***, thereby continuing to deny the Plaintiff adequate medical care.

-8-

24. On April 06, 2017 in another appointment with Defendant Stob, the Plaintiff once again sought clarification of the Plaintiff's medical records, which yielded identical results of no clarification and a genesis of another termination of this appointment as well.[16]

25. On April 08, 2017, the Plaintiff had to be transported to DHMC's Emergency Department via ambulance with Tachycardia heart symptoms, indicating the onset of a potential heart attack.[17]

26. On April 08, 2017 DHMC Emergency Department, Claire Nordeen, MD.,[18] corroborated the Plaintiff's assertion regarding the **degenerative changes** in the Plaintiff's spine as the cause of his severe pain (**cf.:** ¶ 44 above). **See:** EXHIBIT: **10** (Nordeen's Care Instructions) (attached hereto).

27. On May 19, 2017 the Plaintiff was taken to DHMC CCMF for a consultation with Orthopedic Micro-vascular Surgeon, Kayla Robles, PA-C.[19]  At the consultation the Plaintiff was diagnosed with Cubital Tunnel Syndrome[20] as a component of his degenerative disk disease in his neck[21] and back. **See:** EXHIBIT: **11** (Robles' Progress Notes) (attached hereto).

28. Plaintiff has personally spoken with Defendants Major Guerrero and Captain Rolando on multiple occasions, articulating the merits of this complaint.  Plaintiff informed Facility Major, Defendant Major Guerrero of the on-going denials of care and severe pain he faces on numerous occasions substantiating personal involvement of the Defendants Sheriff Firman and Chief Oliva.  Defendants Sheriff Firman and Chief Oliva are superiors of the

---

16 However, this denial of care was witnessed by a DSD Deputy Ortiz at the Plaintiff's request. This DSD Deputy *is not* a party in this Action.

17 This trip to the DHMC was a direct result of Defendant Stob's refusal to treat the Plaintiff at the April 06, 2017 appointment. Additionally, as a result of the April 06, 2017 denial of care by Defendant Stob, while at the DHMC Emergency Department, Plaintiff *was additionally diagnosed* with chest pain, and Degenerative Arthritis,.

18 This person is *not* a party to this Action.

19 This person is *not* a party to this Action.

20 Plaintiff's diagnosis of Cubital Tunnel Syndrome causes him severe pain, numbness, and tingling in both arms and hands. As a result, PA-C Robles has recommended a Cubital Tunnel Release surgery as the Plaintiff faces *irreparable injury as an effect of the degenerative* nature of Plaintiff's disease.

21 **See:** EXHIBIT: **8.3**.

other named DSD Defendants, thereby acquiescing in acts which cause the ongoing conditions with regards to the Plaintiff's complaints.[22]

**29.** The Plaintiff continues to experience severe chronic pain in his degenerative spine as a result of continued inadequate care.

## 2.    CLAIM TWO:

### *Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973:*

### *The Duration of the Plaintiff's Housing Deprived the Plaintiff to an Equal Opportunity Under the Rehabilitation Act of 1973 and the Fourteenth Amendment:*

The Plaintiff *"incorporates by reference"* all facts and claims disclosed within the immediate above within claim one, as all facts herein stated are intrinsically intertwined:

*Supporting Facts:*

**30.** After the terminated appointment, on December 15, 2016 at 1805 hours, Defendant Stob *reassigned* the Plaintiff from 24D general population to Building Four at the DCJ.[23] **See:** EXHIBIT: **7.2.**

**31.** Plaintiff suffered physically and emotionally over the departure from his previous conditions of incarceration in 24D general population, to the 23-hour lock-down in Building Four of the DCJ.

**32.** This placement presented significant deprivation of rights, and deliberate indifference to the treatment instructions outlined by DHMC Orthopedic Specialist, Dr. Russell on

---

22 On April 07, 2017 the Plaintiff mailed a mutual copy of a letter to DSD Defendants Firman and Oliva regarding *Grievance Form No.: 16-01396* (**see:** EXHIBIT: **12**) (attached hereto)*;* and the merits which have given rise to this instant Complaint.

23 This removal from 24D general population by this Defendant was taken *without **any*** factual basis for the regression of the Plaintiff's current treatment plan.

December 05, 2016; and the treatment instructions that were previously enacted upon by Defendant Stob **Cf.:** EXHIBITS: **3** and **4**.

33. On December 16, 2016 the Plaintiff experienced abnormal symptoms and was transported to UH via ambulance. The next day the Plaintiff was subjected to another MRI (**cf.:** Note 13 above).[24]

34. On December 17, 2017 *after* the Plaintiff's overnight stay in UH, the Plaintiff was discharged at 1532 hours to DCJ *with* treatment instructions clearing the Plaintiff, once again, back into general population to ambulate as needed.

35. On December 17, 2016 at 1730 hours, after returning to DCJ, the Plaintiff was medically cleared by DCJ medical staff for general population per instructions from UH. **See:** EXHIBIT: **13** (dated: 12/17/2016, time: 1730 hours [form: CJ99]) (attached hereto). *Thirty minutes upon returning* to original general population dormitory 24D, the Plaintiff *was reassigned* to Building Four in denial of multiple Doctors' care instructions. **See:** EXHIBIT: **14** (dated: 12/17/2016, time: 1800 hours [form: CJ99]) (attached hereto).

36. Subsequently, the Plaintiff filed numerous medical kites[25] (**see:** EXHIBITS: **6.1; 6.2; 6.3; 6.4;** and **6.5**; **see also:** EXHIBITS: **15.1; 15.2; 15.3; 15.4; 15.5;** and **15.6** (medical kites, nos.: 16-24096; 16-24101; 16-24106; 16-24107; 16-24104; and 16-24123) (respectively) (attached hereto)) and DCJ grievances[26] identifying the medical concerns and issues regarding the Plaintiff. **See:** EXHIBITS: **16.1; 16.2; 16.3; 16.4; 16.5; 16.6; 16.7; 16.8; 16.9; 16.10;** and **16.11** (grievances, nos.: 15-21511; 15-21512; 15-16377; 15-25276; 15-16378; 15-25287; 15-25283; 15-25284; 15-25282; 15-25285; and 15-25286) (respectively) (attached

---

24 Orthopedic Specialists at the UH attributed the abnormal swelling as being reactive to the restrictive setting of Building Four at the DCJ. **See:** EXHIBIT: **9** (attached hereto).

25 There exists an extreme conflict between the MRI impressions (**cf.:** EXHIBITS: **8.1; 8.2;** and **8.3**) and the Plaintiff's Progress Notes published by Defendant Stob (**with:** EXHIBITS: **7.1** and **7.2** (progress notes) (attached hereto)). Thus, connoting a deliberate *falsification* of medical documents.

26 It should be noted at this immediate juncture that: **(1)** the DCJ *does not have* a specific or formal medical grievance type form or procedure in place to be in accord with the *HIPPA* mandates; **(2)** the grievances filed by the Plaintiff were answered by *non-medical person*; and **(3)** some of the grievances were answered by the same medical person that was grieved by the Plaintiff.

hereto).

37. Plaintiff also suffered from severe pain caused by Building Four's restrictive conditions which were explicitly expressed to the Denver Sheriff Defendants, while being housed within this unit in cells (4-A-12-U[27] and 4-A-3-U) of the DCJ. These conditions constituted an atypical and significant hardship upon the Plaintiff.

38. Plaintiff made personal contact with Defendants: Major Guerrero; Captain Juranek; Captain Hall; Sergeant Anderson; and Sergeant Bowen while being confined within Building Four at the DCJ[28], showing the hard-copy medical documents to the DCJ Defendants, that the treatment instructions from both DHMC's Orthopedic Specialist, Dr. Russell and medical professionals from UH had previously prescribed.

39. At the time of the meetings with the DCJ Defendants (*accord:* ¶ 38 above) the Plaintiff drew special attention to the time needed outside of his confined cell (4-A-3-U) in order to comply with DHMC Orthopedic Specialist, Dr. Russell's, and the Physicians' of UH Discharge Instructions, directives, and orders which DCJ Building Four's conditions could not accommodate.[29]

40. Plaintiff was forced to continue to endure unnecessary suffering and severe pain due to being contained in a small cell (4-A-3-U) for 23-hours a day.

41. On countless instances Plaintiff requested additional time out of his cell from DSD deputies and Defendant Sergeant Anderson and Sergeant Bowen, to ambulate per Doctors' rehabilitative instructions, directives, and orders; however these requests were denied.[30]

---

27 The conditions of this particular cell is commonly referred to as the ***"Dark-Side."***

28 This time spent within DCJ medical housing of Building Four (4-A-3-U) was from December 15, 2016 through January 14, 2017; with the exception of one-day due to the visit to UH for another MRI.

29 <u>See</u>: EXHIBIT: **3** (Russel's Full Care Plan) and EXHIBIT: **9** (UH Discharge Instructions) (attached hereto).

30 These grievances were articulated via medical kites, the DCJ grievance process, and person to person conversations with each named DCJ Defendant throughout Plaintiff's time spent within Building Four of the DCJ. Plaintiff also expressed to the DCJ Defendants that they were punishing him for speaking up regarding his medical condition; implying a retaliation for these concerns.

**42.** On December 24, 2016, Plaintiff was forced into cohabitation in cell (4-A-3-U) within Building Four of the DCJ with another DCJ inmate who had been placed on disciplinary sanctions, and was sentenced to 5-days of punitive custody in Building Four of the DCJ.[31]

**43.** On December 27, 2016 at 1445 hours, Plaintiff had his first encounter with DCJ Defendant facility Major, Major Guerrero, regarding each of Plaintiff's concerns to date. Plaintiff firmly expressed his pain and discomfort, also voicing that his placement in DCJ Building Four was retaliative from the December 15, 2016 appointment with Defendant Stob. [32]

**44.** Multiple DCJ RN's scheduled Plaintiff for doctor's appointments to be seen by Defendants Stob and Medical Director, Defendant Crum, as they were the only individuals capable of clearing the Plaintiff to return to general population. However, these appointments and the Plaintiff's medical chart would be canceled and passed over, respectively on the day of the scheduled appointments.

**45.** Plaintiff remained in Building Four of the DCJ *without any medical examination(s)* from Defendants Stob and/or Crum, even-though the Plaintiff filed multiple medical kites, grievances, and spoke to numerous DCJ officials requesting medical attention.

**46.** Defendants Stob and Crum repeatedly *denied physical examination(s)* to the Plaintiff, and held DCJ RNs in contempt for their efforts to clear Plaintiff from Building Four of the DCJ and to place the Plaintiff back into the general population of the DCJ.

**47.** The Plaintiff believes that all Defendants have violated his rights to to be free from cruel and unusual punishment.

**48.** The Plaintiff asserts that *all* named Defendants were aware of the existing conditions which the Plaintiff was complaining about because the Plaintiff did-in-fact inform each named

---

31 When Plaintiff inquired in person with DCJ Defendant Captain Geranic, how one could distinguish between the Plaintiff being housed for medical purposes, and a punitive inmate being housed for DCJ disciplinary infractions in the same cell; this DCJ Defendant could *not* articulate nor offer *any* plausible explanations.

32 Plaintiff pleaded he had *not* violated *any* facility rules, *nor* has he had a doctor's visit since the date of assignment on December 15, 2016, even-though Plaintiff was being housed in Building Four allegedly for medical reasons.

Defendant of these conditions of the housing and medical needs of the Plaintiff.

49. On January 6, 2016 during a conversation, in passing, with Defendant Stob the Plaintiff pleaded with this Defendant so that the Plaintiff could return to the general population of the DCJ to allow the Plaintiff to perform the Orthopedic Specialists' instructions, directives, and orders as previously published.

50. On January 13, 2017 the Plaintiff was granted a reprieve from Building Four of the DCJ and was subsequently moved back to dormitory 24D of general population at the DCJ on January 14, 2017.

51. On January 14, 2017 after returning to dormitory 24D in general population at the DCJ, Plaintiff noticed a significant more amount of pain in his neck and back. As such, the Plaintiff requested his medical records from the DHMC staff and the DCJ officials.

52. The DHMC Medical Staff and the DCJ Defendants above have, through their actions, established a *"custom of practice"* even though such a custom has **_not_** received a formal approval through the body's official decision-making channels.

53. The Plaintiff is presently still incarcerated within the DCJ and there exists a very strong probability that the Plaintiff **_will be subjected_** to the same conditions of confinement, which have given rise to the complained of issues within this Complaint.

### E.    PREVIOUS LAWSUITS:

There have **_not_** been any previous lawsuits filed by the Plaintiff within the Federal Courts regarding the claim(s) and issue(s) complained of within this instant 42 U.S.C. § 1983 Action.[33]

### F.    ADMINISTRATIVE RELIEF:

1. There does exist a formal grievance procedure at the DCJ in which the Plaintiff is confined.

---

33 There was a Colorado State Civil Case that was filed, and was subsequently dismissed because there was no personal service effected upon the named Defendants. **See:** EXHIBIT: **17** (Court's ORDER) (attached hereto).

2.  The Plaintiff *did* exhaust the administrative remedies as are available to the Plaintiff.

## G.    REQUEST FOR RELIEF:

1.  The Plaintiff requests Declaratory relief.

2.  The Plaintiff requests Injunctive relief.

3.  The Plaintiff requests Monetary relief in the amount of: **$ 1, 500, 000.00**

4.  The Plaintiff reserves the right to amend any and all of the above if needed during the duration of this Litigation.

## DECLARATION UNDER PENALTY OF PERJURY:

I declare under penalty of perjury that I am the Plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct to the best of my personal knowledge. **See:** 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Executed on this **28** day of June , 2017.

Respectfully Submitted,

/s/: _____

Mr. Leon D. Barrow, *Pro Se*
DSD # 0000753952
Denver County Jail (DCJ)
P.O. Box 1108
Denver, Colorado 80201+1108.

 SPINE INSTITUTE 

George A. Frey, MD
Michael Gallizzi, MD
Kevin Schmidt, MD

Thomas C. Sanders, PA-C
Heather Duncan, PA-C
MaryJane Bennett, MSN FNP

3277 South Lincoln Street ◆ Englewood, CO 80113-2512 ◆ Tel (303) 762-0808 ◆ Fax (303) 762-9292

www.coloradospineinstitute.com

## **WORK STATUS AND PROGRESS REPORT**

Patient Name: **Leon D. Barrow**

Date of Birth: **3 / 2 / 84**

Employer: _____

Operation Performed: **Lumbar Fusion L5-S1**

Diagnosis: **Spine Fusion 298.1**

Date of Injury: ___/___/___

Date of Surgery: **10 / 31 / 16**

### Present Status Report:

☑ Patient will need "no-work-status" for **3** days / weeks / (months) from date of surgery, estimated.

❑ Patient is able to continue Full Work Status **with** restrictions (see below).

❑ Patient is able to continue Part-Time Work **with** restrictions (see below).

    ❑ Restricted work for ____ days / weeks / months, estimated.

☑ Patient off work status from: **10/31/16** until **Approx. 1/23/17**

☑ Recommendations: **Activities as tolerated within restrictions listed below**

❑ Patient is able to continue Full Work Status **without** restrictions.

❑ Patient is discharged from care.

### RESTRICTIONS

☑ No twisting, turning, bending, stooping, crawling/climbing, or heavy lifting/push/pull/carry.

☑ Limit sitting to 20-30 minutes at a time, followed by a 5-10 minute change in activity or position.

❑ Must wear back brace.

❑ Continued treatment includes: ___ Physical Therapy ___ Medication ___ Surgery

| Limitations in **frequent** lifting | | Limitations in **maximum** lifting | |
|---|---|---|---|
| ☑ | 0-2 lbs. | ❑ | 0-2 lbs. |
| ❑ | 2-5 lbs. | ❑ | 2-5 lbs. |
| ❑ | 5-10 lbs. | ☑ | 5-10 lbs. |
| ❑ | 10-20 lbs. | ❑ | 10-20 lbs. |
| ❑ | 20-30 lbs. | ❑ | 20-30 lbs. |
| ❑ | 40 lbs. and above | ❑ | 40 lbs. and above |

Comments: _____

Physician Signature: _____  Date: **10 / 20 / 16**

© 3/2011 Colorado Comprehensive Spine Institute, LLC

**EXHIBIT: 1**

DENVER SHERIFF DEPARTMENT

## RECOMMENDATIONS FOR CLASSIFICATION

It is recommended that _____Barrow, Leon_____          16-267703

INMATE NAME          CD #

be housed with the following considerations:

Medically Required                    Expiration Date

BOTTOM BUNK.................................... ☒          until 1/24/17

BOTTOM TIER..................................... ☒          until 1/24/17

HOUSE WITH OTHER INMATES (WHEN POSSIBLE). ☐

DISABILITY (Deaf/Hard of Hearing, Wheelchair etc.).. ☒

    TYPE of ASSISTIVE DEVICE.............. ☒  W/C          until 1/24/17

PREGNANT........................................ ☐

OTHER............................................ ☒  House in 3M

REASON: Rx and ambulation restrictions

Staff Member: _Shw Bower RN_    11/22/16    0033    Power RN
            SIGNATURE          DATE       TIME    STAMP

*If a classification cannot be accommodated please discuss with the staff member

Officer: _____ Discussed with staff member: _____

At: _____  _____
    DATE          TIME

Copy-
Original-    Medical Record
            Classification                    Revised 08/17/2016

---

DENVER SHERIFF DEPARTMENT

## RECOMMN BarcodePlace CATION

BARROW, LEON DOB: 3/2/1984
It is recommended that _____ BI:    DPD: 753952 _____          _____
                                                              CD #

be housed with the following considerations:

Medically Required                    Expiration Date

BOTTOM BUNK.................................... ☑

BOTTOM TIER..................................... ☑

HOUSE WITH OTHER INMATES (WHEN POSSIBLE). ☐

DISABILITY (Deaf/Hard of Hearing, Wheelchair etc.)..... ☐

    TYPE of ASSISTIVE DEVICE.............. ☐

PREGNANT........................................ ☐

OTHER............................................ ☑  no lifting > 2 pnd's  Lo... 'k > 3 wks

REASON: _s/r... 'k ... .... l_

Staff Member: _R...  Green_    11/22/16    _____    _____
            SIGNATURE          DATE       TIME    STAMP

*If a classification cannot be accommodated please discuss with the staff member

EXHIBIT : 2

# AVS - Outpatient CCMF

Printed 12/5/2016 12:21 PM



**DENVER HEALTH**
*Level One Care for ALL*

**DH PAV B CCMF OP**
**780 Bannock Street**
**Denver CO 80204**
**Phone: 303-436-6000**

**Leon Daunta Barrow**
**12/5/2016 8:00 AM   Office Visit**

Provider: **Timothy G. Russell, PA-C**
Department: **Dh Pav B Ccmf Op**

## Thank you for choosing Denver Health for your care!

**Your Full Care Plan**

**Instructions**

**Impression:**  L5-S1 disc herniation s/p L5-S1 PSF and ALIF on 10/31

**Plan:**
1.  Physical exam and x-rays are reviewed and discussed with the patient.
2.  Patient still needs 4 weeks of bending, lifting, twisting precautions.  Encourage walking as much as possible.  May need walker for this.
Okay to transition to the "pods"
Vicodin or Oxycodone for pain control recommended. (He has been on MS contin so needs to step down appropriately.  Ex: Oxy for 2-3 weeks and wean off)
3.  Patient is given the opportunity to ask questions and voice concerns and all are answered to their satisfaction
4.  **Follow-Up:** 6 weeks
5.  **X-rays on return:**  2V L Spine

Should inmate be released prior to next appointment, they may call 303-602-1590 or present to the orthopedic outpatient clinic to schedule an appointment.

## Other Info from Your Visit

**Reason for Visit**

| | |
|---|---|
| **New Patient Visit** | |
| Reason for Visit History | Pt here for f/u, s/p lumbar fusion L5-S1 |

**Your Vital Signs Were**

ExHiBiT : 3

# DENVER SHERIFF
## HEALTH SERVICES

### PROBLEM ORIENTED RECORD
### PROGRESS NOTE

NAME: Barrow, Leor

DOB: 3/2/84

BOOK IN#

CD# 753952

| DATE/TIME | SUBJECTIVE/ OBJECTIVE/ ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/5/16 12:50 | Medical Housing Rounds | c̄ Clear to Gen Pop. |
| | 32 y/o. Male c̄ hx of L5-S1 disc herniation | c̄ Bottom bunk + Tier x 30 d. |
| | S/P L5-S1 PSF c̄ ALIF on 10/31 | |
| | Seen by ortho today ¯p recent hospital. | - Vicodin # 10 TID x 5 d |
| | stay after unwitnessed falls. | 1 h̄ # PO BID x 5 d |
| | Records from BH-ortho visit reviewed | 1 ÷ PO ↓TID x 5 d |
| | Ok for G.P. c̄ step down to medi- | |
| | | c̄ d/c me contin after next |
| | i/M resting comfortably | dose |
| | Moves ext. equally | |
| | Requests G.P | Flu c̄ stab 3 week 3rd fresh |
| | | line |
| | will taper vicodin | Flu 12/10/16     Christian Stob, DO |
| | Clear to G.P | c̄ Dr Stob     144733 |
| | i/flu | 3/dr/UBC |
| | | Nurse ✗ 12/5/16 |
| | | 12:50 |
| | | T. Anding RN |
| 12/6/16 07:50 | I/M w/ documented allergy to vicodin. | P: V.O. per Dr Stob to give |
| | Per DH - causes "itching." | ① Tramadol 100 mg PO x 1 dose now |
| | Discussed concern c̄ Dr Stob → will | ② Hold vicodin until further notice |
| | address w/ I/M today. | Andrea Johnson RN |

Reviewed 05/14/2014

EXHIBIT: 4

DENVER SHERIFF DEPARTMENT

## RECOMMENDATIONS FOR CLASSIFICATION

INMATE NAME: Barrow, Leon

CO #: 763952

It is recommended that _____ be housed with the following considerations:

| | | Medically Required | Expiration Date |
|---|---|---|---|
| BOTTOM BUNK | ☒ | Restration → | Expires 1/6/17 |
| BOTTOM TIER | ☒ | Restriction → | Expires 1/6/17 |
| HOUSE WITH OTHER INMATES (WHEN POSSIBLE) | ☐ | ⟶ | ⟶ |
| DISABILITY (Deaf/Hard of Hearing, Wheelchair etc.) | ☐ | ⟶ | ⟶ |
| TYPE of ASSISTIVE DEVICE | ☒ | Walker for Ambulator | |
| PREGNANT | ☐ | | |
| OTHER | ☒ | Cleared Medically from Medical to General Population | |

REASON: Per Dr Stobol

*If a classification cannot be accommodated please discuss with the staff member.

Staff Member SIGNATURE: [signature]     DATE: 12/5/16     TIME: 1554     STAMP: T. Anding RN

Officer: _____     ☐ Discussed with staff member.

At: _____     DATE _____     TIME _____

DEC 5 PM 3:53

Copy-
Original-
Medical Record Classification

Revised 08/17/2016

EXHIBIT: 5

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  17953

DPD# 16 - 26770 5

Book in Number  753952
(Numero de Book-in)

Date 12-8-16
(Fecha)

Inmate Name  Leon Baccow
(Nombre del Preso)

Building Location  24D
*Ubicacion de edificio

Date of Birth  3-2-1984
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
**(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)**

Inmate Signature:  _____ ( FOLLOWS UP  APP T )
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita:)

SEEKING COMPARISON OF  IMAGES POST OP  FROU COMPREHENSIVE SPINE
INSTITUTE  & DENVER HEALTH  IMAGES FROM  EACH OF THE (4)
INCIDENTS  STEMMING FROM  11-21-2016.

## INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/12/16 0800 | Please see kite 17879  M. D.  Yost LPN | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Triage Date: _____
Assessment: Routine ☐  Urgent ☐
Plan: ☐ Medical Records
☐ Nkz
☐ Mental Health
Nurse Stamp:

12/9/16  Confirmes W. LPN

EXHIBIT : 76-1

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  17954

DPD# _753952_

Date _2-8-16_
(Fecha)

Building Location _24D_
*Ubicacion de edificio

Book in Number _16-267703_
(Numero de Book-in)

Inmate Name _LEON BARROW_
(Nombre del Preso)

Date of Birth _3-2-1984_
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature: _____ (FOLLOW ON APPOINTMENT)
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

FILED MEDICAL KITE FROM CITY JAIL 12-7-16 REGARDING A FOLLOW ON W/ DR. STAUB. HAVE OBVIOUSLY MOVED TO COUNTY JAIL IN LAST 24 HOURS & AM NOT SURE IF ALL KITES FOLLOWED. IF NOT, REQUESTING DR'S LINE VISIT AFTER L5-S1 LAMINECTOMY 10-31-2016 AS SOON AS EARLIEST POSSIBLE IN RELATION TO PAIN & FOLLOW-ON QUESTIONS THANK YOU

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/12/16 0800 | Please see kite 16-17879 ___ D. ___ost LPN | |
| | | |
| | | |
| | | |
| | | |
| | | |

Triage Date: _12/9/16_
Assessment:
Routine ☐  Urgent ☐
Plan: ☐ Medical Records ☐ NKL
☐ Mental Health
Nurse Stamp: _W. Contreras LPN_

EXHIBIT: B-2

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  17879

DPD# 753952

Book in Number 16-267703
(Numero de Book-in)

Date 12-9-16
(Fecha)

Inmate Name Leon Barrow
(Nombre del Preso)

Building Location 24D
*Ubicacion de edificio

Date of Birth 3-2-84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
#### (Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature: Follow on Kite Req.
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita:)

I find it completely asinine to do morning meds @ 0800 hrs, & evening meds, in the "afternoon @ 1530 hrs. I am in pain @ night when night meds (hence the title) should be dispensed. My pain is an 8 @ night! & what is the point of asking me that, & then titrating the pain meds?! It hasn't been below a 6. I need to see a provider. Plz refer to Grievance. — Thanks

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
#### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/12/16 0800 | Pt has submitted several kites r/t recent spinal surgery (10/31) & pain management. Pt is currently housed in bldg 24 & requested to be transported via WC to bldg 9 for this kite visit. | - Lumbar X-Ray (TORB Dr. Stob) (Spoke c̄ Colewann & pt will goto DH on 12/14/16 for X-ray) (too late to send on 12/13/16) noted @ 1400 @ D. Yost LPN |
|  | Pt's chief complaint is ↑ pain & time between med passes. Pt is also concerned his recent fusion may be damaged r/t several unwitnessed falls while incarcerated over the last several weeks. current VS: BP: 133/97, p-97 T-97.3 RR-16 Ø apparent distress c̄ this time. Surg site in lower back appears to be healing well. Ø s/sx of infen | - Pt has f/u c̄ Stob on 12/15/16 (already scheduled). @ D. Yost LPN C. Bean NP @ 12/13/16 |
|  | Will consult c̄ Dr. Stob | @ D. |

DEC 10 AM 7:21

Triage Date:
Assessment:
Routine ☒  Urgent ☐
Plan: ☐ Medical Records
☐ BRKL
☐ Mental Health
Nurse Stamp: Jacobson RN RJ

EXHIBIT: 03

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  17958

DPD# _753952_

Book in Number _16- 267703_
(Numero de Book-in)

Date _12-10-16_
(Fecha)

Inmate Name _LEON BARROW_
(Nombre del Preso)

Building Location _24D_
*Ubicacion de edificio

Date of Birth _3-2-84_
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
**(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)**

**Inmate Signature:** _X_____ (FOLLOW-ON)_
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

_AFTER PERSONAL INJURIES FOLLOWING SURGERY, I AM EXPERIENCING PAIN IN:_
_MY THORACIC SPINE; PIRIFORMIS; HIPS; PELVIS; & GROIN PAIN. ALSO EX-_
_PERIENCING NERVE PAIN ON AN ACUTE PAIN LEVEL MULTIPLE TIMES DAILY IN_
_BOTH LEGS. MAY I PLEASE RECEIVE MEDICAL ATTENTION ???_

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/12/16 0800 | Please see kik 17879  A D.  Yost LPN | |
| | | |

Triage Date: 12/11/16
Assessment:
Routine ☐ Urgent ☐
Plan: ☐ Medical Records
☐ KL
☐ Mental Health
Nurse Stamp: Jacobson RN (2N)

DEC 11 AM 7:03

EXHIBIT: 64

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  17897

DPD# 753952

Book in Number  16-260773
(Numero de Book-in)

Date 12-11-16
(Fecha)

Inmate Name  LEON BARROW
(Nombre del Preso)

Building Location  24D
*Ubicacion de edificio

Date of Birth  3.2.84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
### (Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature: _Y...Bars_ ( FOLLOW-ON )
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita:)

AT 0835 MY CURRENT LOWER BACK PAIN IS A 9. NERVE PAIN IS BI-LATERAL 3 IS MODERATE @ 6. THORAIC SPINE IS INTERMEDIATE ALONG RIGHT SIDE. ACCOMPANIED BY PAIN WHEN I LOOK DOWN @ TIMES.

---

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/14/16 0900 | States he feels like body in back are numb - A&O x 3 w/ denature. Verbalize. Understands | MDL 12/15/16, already scheduled |
| 12/22/16 | chart reviewed. Pt seen @ U.H. for Note- film reviewed writ claimed 12/16 fall. Pt did not fall. Pt noted to A/T c NO difficulty until he began to claim that he fell — | D/C Flexeril D/C Vicodin ES Tylenol 2 po BID x 4 wks See note on chart for action to be taken in the event of a claimed fall. |

DEC 12 16 6:27

E. Goppelt
HIM Clerk

EXHIBIT: B5

## DENVER SHERIFF
## HEALTH SERVICES

## PROBLEM ORIENTED RECORD
## PROGRESS NOTE

BM-1-103-B1

NAME: Barrow, Leon

DOB: 3/2/84

BOOK IN#

CD# 753952

| DATE/TIME | SUBJECTIVE/ OBJECTIVE/ ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 11/28/16 1430 | Medical Housing Rounds | — d/c wheelchair |
| | Pt seen ⅔ recent hospital stay after | |
| | unwitnessed fall | |
| | At DH 11/23 → 11/26 | NOV 28 2016 |
| | Records reviewed * | C. Stob D.O. |
| | discharge dx: | |
| | - Fall @ Jail | |
| | - Fall @ hospital   } concern for malingering | Noted 11/28/16 1663 |
| | Acute on chronic back pain | V. Gonzalez Ward Clerk |
| | L5/S1 fusion 11/31 | |
| | Constipation    upper Mover ext. 5 issue | Noted ABG off #1 Blair Charge RN |
| | Laying in bed. No acute distress or pain noted. | 11-28-16 1910 |
| | Pt evaluated by Neurology + they noted poor effort | |
| | in movement during eval + 3 MRI in the last | |
| | weeks all being ⊖ for acute changes. * | |
| | | |
| | Pt states the back pain is improving + pushing | |
| | attempt to ambulate more. Agreeable to taper | |
| | meds contin as suggested/plan @ discharge from DH. | |
| | | |
| | Does report intermittent ⓇR upper chest/nipple/shoulder | |
| | pain lasting 5-10 sec. ~3-4 x/day for the last 4 day. | |
| | Had C-spine MRI which was normal. Suspect MSK | |
| | Encouraged continued use NSAID + stretching | |
| | But will ✓ EKG | |
| | | |
| | Pt requests to d/c b/c. Doing well w/ neither. will d/c | |

Reviewed 05/14/2014

EXHIBIT: B1

# DENVER SHERIFF
# HEALTH SERVICES

## PROBLEM ORIENTED RECORD
## **PROGRESS NOTE**

NAME:

| BarcodePlace

BARROW, LEON  DOB: 03/02/1984
BI:        DPD: 753952

CD#                    24-D-401-2

| DATE/TIME | SUBJECTIVE/ OBJECTIVE/ ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/15/16 955A | 32 y.o. male | − Vicodin 〃 PO BID x 7days |
| | Flu: Pt known to me | 〃 PO BID p 7 day |
| | CBP c̄ laminectomy late oct 2016 | − Please give new wheelchair |
| | Pt becomes argumentative | − Please give wlc |
| | Believes needs to be rebeeced | − House in medical |
| | states multiple falls | |
| | (unwitnessed) | − Flu c̄ STOB 2 week |
| | Accusatory of not receiving proper | Appt on 1/12/17 |
| | care | Noted ~DLPN |
| | Explained to Pt that has been to the | A. Beasley LPN |
| | hospital after claimed falls + evaluated | 12/15/16 |
| | c̄ referred to ortho-spine who has seen | |
| | and evaluated. | |
| | (of note: last visit to hospital noted concern for | |
| | malingering) +ortho visit noted to per function | |
| | c̄ vicodin. | |
| | Pt concerned for continuing pain + falls | |
| | Explained has had 3MRI in the past several week | |
| | + note ⊖ for changes. Hit bed reay yesterday | |
| | showing L5S1 pedicular screws present w/in | |
| | vertebral body. Pars am device / unchanged. | |
| | Denies any bowel / bladder issues | |
| | 4/o pain radiating to thighs ∅ spasm noted on exam | |
| | DTRs sym @ patella ∅ clonus. | |
| | Pt becomes very condescending + accusatory · had to end encounter as | |
| | Pt persisted despite "not being mad" to accuse medical of improper care | |
| | after multiple attempt to explain  Plan.   will prolong taper of his use in | |



**DENVER HEALTH**
Level One Care for ALL

Health Information Management
301 W. 6th Ave.
Denver CO 80204
Inpatient Record

BARROW,LEON DAUNTA
MRN: 3157448
DOB: 3/2/1984, Sex: M
Adm 11/23/2016 D/C 11/27/2016

All Notes (continued)

**Discharge Summaries by Julie A. Taub, MD at 11/26/2016 4:59 PM (continued)**                          Version 1 of 1

Ct Head Without Contrast

Result Date: 11/25/2016
Narrative: CT OF THE HEAD WITHOUT CONTRAST HISTORY:Headache, post trauma TECHNIQUE: Contiguous axial sections were performed through the head were obtained with multiplanar reformats. No IV contrast administered. COMPARISON: None. FINDINGS: Brain and intracranial structures: The gray-white differentiation is maintained. The ventricles and sulci are normal in size. There is no mass lesion, hemorrhage or acute infarct. No midline shift. Skull: Normal. Scalp: Normal. Face and orbits (included portions): Normal. Paranasal sinuses and mastoid air cells (included portions): Normal.

Impression: IMPRESSION: No acute intracranial abnormality.

Ct Cervical Spine Without Contrast

Result Date: 11/21/2016
Narrative: CT Cervical Spine TECHNIQUE: 0.625 millimeter thick axial multidetector CT images of the cervical spine were obtained without contrast followed by coronal and sagittal reconstructions. COMPARISON: MRI from 06/02/2015 HISTORY: please eval for fx FINDINGS: The vertebral bodies maintain normal height and alignment. Disc spaces are maintained. The spinal canal demonstrates no evidence of canal stenosis. The craniocervical junction is unremarkable. The C1-C2 articulation and prevertebral soft tissues are normal. There are no significant degenerative changes seen. The paravertebral soft tissues are unremarkable.

Impression: IMPRESSION: Unremarkable cervical spine.

Ct Lumbar Spine Without Contrast

Result Date: 11/21/2016
Narrative: CT lumbar spine without contrast COMPARISON: 10/27/2015, 6/2/2015 TECHNIQUE: Axial CT images were obtained of the lumbar spine without contrast. Coronal and sagittal reconstructions performed. FINDINGS: Postsurgical changes are present from L5-S1 posterior and interbody fusion. There is bony production posterior laterally, but solid bony bridging is not confirmed. No hardware failure. There is no appreciable foraminal or canal stenosis although streak artifact does limit evaluation of the surgical level. Vertebral body height and alignment is normal. No fractures are seen.

Impression: IMPRESSION: 1. No acute process. 2. L5-S1 surgical fusion as above without convincing solid bony bridging

Mri Lumbar Spine Without Contrast

Result Date: 11/24/2016
Narrative: MRI lumbar spine TECHNIQUE: Sagittal and axial T1 and T2 and sagittal STIR images of the lumbar spine were obtained without gadolinium. COMPARISON: CT lumbar spine obtained 11/21/2016. Lumbar spine radiograph obtained 11/23/2016.. REASON FOR STUDY: lumbar back pain. Fall. Urinary incontinence. Requested by Ortho surg/spine FINDINGS: L5-S1 posterior fusion is redemonstrated, with artifact from screws and interbody cage somewhat limiting evaluation of the neural foramina particularly in the sagittal sequences. The vertebral bodies maintain normal height and alignment with no evidence of fracture or collapse. The marrow signal is normal. Intervertebral disc demonstrate normal height and water content. The conus is normal in position and signal terminating at L1. L1-L2: There is no disc bulge, facet disease, or neural

EXHIBIT: A. 1



**DENVER HEALTH**
Level One Care for All

Health Information Management
301 W. 6th Ave.
Denver CO 80204
Inpatient Record

BARROW,LEON DAUNTA
MRN: 3157448
DOB: 3/2/1984, Sex: M
Adm 11/23/2016 D/C 11/27/2016

All Notes (continued)

**Discharge Summaries by Julie A. Taub, MD at 11/26/2016 4:59 PM (continued)**                                                    Version 1 of 1

foraminal or canal stenosis. L2-L3: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. L3-L4: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. L4-L5: There is a minimal median posterior disc protrusion, without facet disease, or neural foraminal or canal stenosis. L5-S1: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. There is no edema surrounding the facets on the STIR images to suggest an acute inflammatory process. The paravertebral soft tissues are unremarkable. The visualized portions of the SI joints and sacrum are unremarkable. There is no evidence of pars interarticularis defect. The nerve roots are normal in size and distribution with no evidence of arachnoiditis.

Impression:  IMPRESSION: No evidence of nerve root impingement or canal stenosis. Osseous structures and orthopedic hardware appear intact and well aligned.  Addendum by Dr. Edwards 11/24/2016 6:06 AM: I have reviewed the images and resident report; I agree with the above impression.

---

Mri Lumbar Spine Without Contrast

Result Date: 11/21/2016
Narrative:  MRI lumbar spine  TECHNIQUE: Sagittal and axial T1 and T2 and sagittal STIR images of the lumbar spine were obtained without gadolinium.  COMPARISON: MRI dated 10/27/2015 and CT dated the 11/21/16.  HISTORY: Lumbar surgery status post fall with new paresthesias in the L4-L5 distribution surgery performed 5/24/2016. FINDINGS: Surgical changes of L5-S1 posterior lumbar fusion are redemonstrated. Mild marrow edema is present at the inferior endplate of L5 and the superior endplate of S1. A broad-based disc bulge again protrudes into the spinal canal resulting in  mild thecal sac compression. There is mild narrowing at the L4-L5 intervertebral disc. Otherwise, the intervertebral disc demonstrate normal height and water content. The conus is normal in position and signal terminating at L1. L1-L2: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. L2-L3: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. L3-L4: There is no disc bulge, facet disease, or neural foraminal or canal stenosis. L4-L5: A small disc bulge at L4-L5 results in mild bilateral neuroforaminal narrowing and mild thecal sac narrowing. L5-S1: Artifact from spinal fusion limits evaluation though there appears to be at least mild right and moderate left neuroforaminal narrowing. Disc bulge also mildly indents the thecal sac.  There is moderate edema within the posterior soft tissues and paraspinal musculature. The visualized portions of the SI joints and sacrum are unremarkable.  There is no evidence of pars interarticularis defect.  The nerve roots are normal in size and distribution with no evidence of arachnoiditis.

Impression:  IMPRESSION:  1. Surgical changes of L5-S1 posterior lumbar fusion with persistent disc bulge at this level causing at least mild right and moderate left neuroforaminal narrowing. No acute findings. 2. Mild to moderate paraspinal muscular and posterior lumbar soft tissue edema.

---

Mri Complete Spine (c,t, And L) Without Contrast

Result Date: 11/25/2016
Narrative:  TECHNIQUE: Sagittal T1-weighted, T2-weighted and STIR images were obtained of the cervical, thoracic and lumbar spine.  FINDINGS: Cervical spine: Small central disc protrusions at C4-5 and C5-6. No alignment abnormality or spinal canal compromise. No spinal cord deformity or abnormal spinal cord signal. Thoracic spine: Hemangioma in T3 vertebral body. No alignment abnormality or significant degenerative changes. No spinal canal compromise. No spinal cord deformity or abnormal spinal cord signal.  Lumbar spine: Conus medullaris is unremarkable, terminating at L1. Minimal disc bulges at L2-3, L3-4 and L4-5. L5-S1 fusion with bilateral pedicle screws attached to posterior rods. Disc implant in the L5-S1 disc space. No residual spinal canal compromise. No alignment abnormality.

Barrow, Leon Daunta (MR # 3157448) CSN:1020247505   Printed at 2/2/17 2:39 PM                                      Page 140



**DENVER HEALTH**
Level One Care for ALL

Health Information Management
301 W. 6th Ave.
Denver CO 80204
Inpatient Record

BARROW,LEON DAUNTA
MRN: 3157448
DOB: 3/2/1984, Sex: M
Adm 11/23/2016 D/C 11/27/2016

**All Notes (continued)**

**Discharge Summaries by Julie A. Taub, MD at 11/26/2016  4:59 PM (continued)**                    Version 1 of 1

Impression:  IMPRESSION: 1. Mild degenerative changes of the cervical spine. 2. Unremarkable thoracic spine. 3. Degenerative changes and postsurgical changes of the lumbar spine, without spinal canal compromise. 4. No explanation for neurologic symptoms is identified.

**Vitals (last 24 hours):**
Temp:  [35.9 °C-37 °C] 36.6 °C
Heart Rate:  [80-104] 89
Resp. Rate:  [16-18] 16
BP: (99-127)/(61-80) 107/73
SpO2:  [92 %-99 %] 95 %
O2 Device: None (Room air) (11/26/16 1629)
O2 Flow Rate (L/min): 0 L/min (11/26/16 1629)

**SUBJECTIVE DAY OF DISCHARGE**
Continued severe back pain.

**PHYSICAL EXAM DAY OF DISCHARGE**
**Gen Appearance:** NAD
**Cardiovascular:** RRR S1S2 no MRG
**Respiratory:** CTA bilateral, No wheezes, rales, rhonchi
**Gastrointestinal:** Soft, +BS, nontender, No rebound, rigidity, guarding
**Genitourinary:** No Foley
**Lymph:** No LE edema
**Neurologic:** No confusion
Says he is unable to move his legs or feet. No contraction of gastrocnemius with attempts at moving LE.
Opposite leg does not extend when trying to lift one of LE.
Strength 5/5 x bilateral UE.
**Psychiatric:**  Calm & pleasant

**RECENT LABS:**

| Results from last 7 days | | | |
|---|---|---|---|
| Lab | Units | 11/25/16 1146 | 11/23/16 1923 |
| WBC AUTO | k/uL | 3.5* | 5.9 |
| HEMOGLOBIN | g/dL | 14.7 | 15.5 |
| HEMATOCRIT | % | 42.4 | 45.0 |
| PLATELETS AUTO | k/uL | 341 | 430* |

| Results from last 7 days | | |
|---|---|---|
| Lab | Units | 11/23/16 1923 |
| SODIUM | mmoL/L | 139 |
| POTASSIUM | mmoL/L | 3.6 |
| CHLORIDE | mmoL/L | 103 |
| CO2 | mmoL/L | 23 |
| BUN | mg/dL | 12 |
| CREATININE | mg/dL | 1.10 |
| GLUCOSE | mg/dL | 70 |
| CALCIUM | mg/dL | 9.3 |

| Results from last 7 days | | |
|---|---|---|
| Lab | Units | 11/25/16 1146 |
| TOTAL PROTEIN | g/dL | 8.0 |
| ALBUMIN | g/dL | 3.9 |

| Results from last 7 days | | |
|---|---|---|
| Lab | Units | 11/23/16 1923 |
| BILIRUBIN TOTAL | mg/dL | 1.2 |
| BILIRUBIN DIRECT | mg/dL | 0.2 |
| AST | U/L | 20 |

Barrow, Leon Daunta (MR # 3157448)  CSN:1020247505    Printed at 2/2/17  2:39 PM            Page 141

Barrow, Leon D (MR # 5450708)                                    Encounter Date: 12/16/2016



# University of Colorado Hospital
### UNIVERSITY OF COLORADO HEALTH

**Emergency Department**
12605 E. 16th Ave.
Aurora CO 80045-2548
Phone: 720-848-9111
Fax: 720-848-5157

**Leon D Barrow**                          Department: **Emergency Department**
MRN: **5450708**                           Date of Visit: **12/16/2016**

## Diagnoses this visit
Your diagnoses were ACUTE BILATERAL LOW BACK PAIN WITH BILATERAL SCIATICA and HISTORY OF SPINAL FUSION.

You were seen by Lemery, John M, MD, Dixon, Julia Marie, MD, Jobin, Michael J, MD, and Edmonds, Emily Lynn, PAC.

## Follow-up Information
**Follow up with Rucker, Kim Pyoungsoon, NP. Schedule an appointment as soon as possible for a visit in 2 days.**
Specialty: Nurse Practitioner
Contact information:
  DENVER VA AMBULATORY CARE SERVICES
  11B FIRM C
  1055 CLERMONT ST
  Denver CO 80220
  303-399-8020

**Follow up with SPINE AND REHABILITATION MEDICINE CLINIC OP.**
Contact information:
  1635 Aurora Court Mailstop F712
  Aurora Colorado 80045-2548
  720-848-1980

**Follow up with Your Back surgeon at Swedish Hospital In 1 week.**

## Your Medications

### Start Taking
**DIAZEPAM (VALIUM) 5 MG TABLET**                 **Take 1 tablet by mouth 3 times daily as needed for Muscle Spasm.**

Order Dose:  5 mg

**WALKER -3" FRONT WHEELS**                       **Take 1 Device as instr  .ted one time for 1 dose for Back Pain.**

Order Dose:  1 Device

## These Medications Have Changed
No Medications Reported

## Stop Taking
**PREGABALIN (LYRICA) 100 MG CAPSULE**            **Take 100 mg by mouth 2 times daily.**
Order Dose:  100 mg

EXHIBIT : 9

## Administrations This Visit

| | Admin Date | Action |
|---|---|---|
| diazePAM (VALIUM) injection syringe 5 mg | 12/16/2016 23:36 | Given |
| diazePAM (VALIUM) injection syringe 5 mg | 12/17/2016 06:12 | Given |
| diazePAM (VALIUM) injection syringe 5 mg | 12/17/2016 13:11 | Given |
| gadobenate dimeglumine (MULTIHANCE) injection 20 mL | 12/17/2016 13:04 | Given |
| HYDROmorphone (DILAUDID) injection 1 mg | 12/16/2016 22:10 | Given |
| HYDROmorphone (DILAUDID) injection 1 mg | 12/17/2016 01:30 | Given |
| HYDROmorphone (DILAUDID) injection 1 mg | 12/17/2016 03:54 | Given |
| HYDROmorphone (DILAUDID) injection 1 mg | 12/17/2016 09:44 | Given |
| oxyCODONE (ROXICODONE) immediate release tablet 10 mg | 12/16/2016 19:29 | Given |
| oxyCODONE (ROXICODONE) immediate release tablet 10 mg | 12/17/2016 09:43 | Given |
| pregabalin (LYRICA) capsule 100 mg | 12/17/2016 09:43 | Given |

## Discharge Instructions

Patient is medically cleared to return to jail/his pod. Please allow to ambulate as needed, and no prolonged sitting for over 30 minutes at a time.  Please allow for daily physical therapy exercises to be done (attached). He is to follow up with his spine surgeons within 1-2 weeks.

**Tylenol for pain, avoid NSAIDs. Valium as needed for pain/spasm,** This medication can be sedating. Do NOT take with alcohol, when driving or when operating machinery. Use with caution

Barrow, Leon D (MRN 5450708) Printed by [10932] at 12/17/16 3:52 PM

**MRI READ: IMPRESSION:**
1. Status post posterior lumbar fusion L5-S1 with placement of an intervertebral disc spacer device. Abnormal signal and enhancement involving the anterior L5 vertebral body is probably reactive.

2. No epidural collection or abscess.

3. Findings are superimposed on a mild congenital canal stenosis at L3-5.

### Acute Low Back Pain

**AMBULATORY CARE:**
**Acute low back pain** is sudden discomfort in your lower back area that lasts for up to 6 weeks. The discomfort makes it difficult to tolerate activity.



**Common symptoms include the following:**
- Back stiffness or spasms
- Pain down the back or side of one leg
- Holding yourself in an unusual position or posture to decrease your back pain
- Not being able to find a sitting position that is comfortable
- Slow increase in your pain for 24 to 48 hours after you stress your back
- Tenderness on your lower back or severe pain when you move your back

**Seek immediate care for the following symptoms:**
- Severe pain
- Sudden stiffness and heaviness in both buttocks down to both legs
- Numbness or weakness in one leg, or pain in both legs
- Numbness in your genital area or across your lower back
- Unable to control your urine or bowel movements

**Contact your healthcare provider if:**
- You have a fever.
- You have pain at night or when you rest.
- Your pain does not get better with treatment.
- You have pain that worsens when you cough or sneeze.
- You suddenly feel something pop or snap in your back.
- You have questions or concerns about your condition or care.

**The goal of treatment for acute low back pain** is to relieve your pain and help you tolerate activity. Most people with acute lower back pain get better within 4 to 6 weeks. You may need any of the following:
- **Acetaminophen** decreases pain. It is available without a doctor's order. Ask how much to take and how often to take it. Follow directions. Acetaminophen can cause liver damage if not taken correctly.



**DENVER HEALTH**
*Level One Care for ALL*

**Emergency Department**
Denver Health Medical Center
777 Bannock Street
Denver, CO 80204
303-436-6000

# HOME CARE INSTRUCTIONS

## Leon Daunta Barrow

The information in this after visit summary is up to date as of: 04/08/17 4:59 PM.

### Diagnoses
Other chest pain
Leukopenia, unspecified type
Spondylosis of lumbar region without myelopathy or radiculopathy
Chronic low back pain without sciatica, unspecified back pain laterality

### Diagnoses this visit
Your diagnoses were Chest pain, Decreased white blood cell count, Degenerative arthritis of lumbar spine, and CHRONIC LOW BACK PAIN WITHOUT SCIATICA, UNSPECIFIED BACK PAIN LATERALITY.

### Providers You Were Seen By
1. William G Sungar, DO
2. Claire Anna Nordeen, MD

### Instructions from your Provider
You were seen today for chest pain.
Your exam and testing today were reassuring. Your EKG, troponin, D-dimer, chest xray, electrolytes and electrolytes and kidney function were normal.
Your blood counts showed a low white blood cell count. This is nonspecific and likely not related to your pain. It is just important for you to know about and have your doctor follow up in the future.

**Your low back pain is due to degenerative changes in the spine.**
**It is VERY IMPORTANT for you to do physical therapy to rehabilitate your back and help reduce use of pain medication and regain your ability to do regular activities.**
**A referral to physical therapy has been placed. We have also included back exercises below here to do as you can.**
**Avoid heavy lifting or straining from the waist.**

In the meantime, continue all of your normal medications. Use ibuprofen and tylenol as needed for chest and back pain.

### Outpatient Referrals and Tests
Amb Referral To Physical Therapy/Occupational Therapy

EᕝHIBIT Dᵢ

**Denver Health Hospital
Authority**

BARROW,LEON DAUNTA
MRN: 3157448
Enc Date 05/19/17

**Progress Notes by Kayla A Robles, PA-C at 5/19/2017  8:00 AM**

Author: **Kayla A Robles, PA-C**

Service: **(none)**

Author Type:
**Physician
Assistant**

Filed: **5/21/2017 10:19 PM**

Encounter Date: **5/19/2017**

Status: **Signed**

Editor: **Kayla A Robles, PA-C (Physician Assistant)**

**Patient Name:** Leon Daunta Barrow
**MRN: 3157448**
**DOB:** 3/2/1984
**Age:** 33 y.o.
**Sex:** male

**Diagnosis:** Cubital tunnel syndrome (right confirmed on EMG, left by history and exam); Low back pain

**Date of onset:** November 2016

**Last Visit:** 2/27/17 for back pain, First visit for hand

**Chief Complaint:** Bilateral hand pain/numbness/tingling

**History of Present Illness/Interim History:** Leon Daunta Barrow is a 33 y.o. male presenting in the clinic today for evaluation of his upper extremities.  He notes that during his arrest in November 2016 he has sustained injury to his neck, a few weeks afterwards, he started to have numbness and tingling in both hands.  He notes the burning pain, numbness and tingling start in the neck and go to the hands, mostly affecting the thumb, index, and long fingers on both sides.  He states it is getting worse due to thin mattresses and lack of support while he sleeps.  He has a previous injury to the right hand where he underwent nerve exploration in 2008, and left him with some residual numbness in the thumb in index finger, he does state that this has worsened since November as well.  He is right hand dominant, and notes the right is more bothersome than the left.  Rates his discomfort at 7/10 on the right and 5/10 on the left.  He has concerns about his neck being a source of some of the issues, noting his mother had degenerative disks and required surgery to correct it, and is concerned about the genetic component to degenerative disease.  He had previously seen a chiropractor and noted improvement of many symptoms with their treatment.  He also had been taking Lyrica for his lower extremity numbness and tingling and notes it helped his upper extremities as well, but has not been getting it in the facility.  He also has been taking tylenol and naproxen with no significant changes to his discomfort.

**Social History:**
Patient with degree in Avionics and was employed at Peterson AFB to work on planes.  He denies tobacco and drug use.  He notes social EtOH use.

**Medications:**

Current Outpatient Prescriptions:
• acetaminophen (TYLENOL) 325 MG tablet, Take 325 mg by mouth 2 (two) times a day., Disp: , Rfl:
• mirtazapine (REMERON) 15 MG tablet, Take 15 mg by mouth at bedtime., Disp: , Rfl:

EᕝHIBIT : Iℓ

• ranitidine (ZANTAC) 150mg tablet, Take 150 mg by mouth 2 (two) times a day., Disp: , Rfl:

**Allergies:**
**Allergies**

| Allergen | Reactions |
|----------|-----------|
| • Hydrocodone | Itching |
| *Itching* | |

**Physical Examination:**
**Vitals:**

| | 05/19/17 0851 |
|---|---|
| BP: | (I) 133/91 |
| Pulse: | (I) 108 |
| Resp: | 16 |
| Temp: | 36.7 °C (98.1 °F) |

GENERAL APPEARANCE: healthy, well developed, well-nourished and in no acute distress, alert and oriented x 4.
RESPIRATORY: no increased work of breathing
CARDIAC: symmetric palpable radial pulses 2, brisk capillary refill
SKIN:pink, warm, well perfused, no laceration, abrasion, ecchymosis, other recent injury.  3 well healed scars on the dorsum of the right hand present without hypertrophy or adhesions
NEUROLOGICAL:  Sensation intact to light touch over median, radial, ulnar nerve distribution. AIN and PIN are intact and firing.  Tinel's and Durkan positive - carpal and cubital tunnels bilaterally.  + Spurlings, neck tilt, Wrights, elbow flexion test.  Improvement of symptoms with mild neck distraction.
MUSCULOSKELETAL:
Right and Left Upper Extremities:
There is not a noted deformity. ROM: Full at the fingers, wrist, and elbow. No wasting or atrophy.  There  is not tenderness over hand, wrist or epicondyles.Left Upper Extremity:

**DATA:**
**EMG: 5/15/17**
Impression: Mildly abnormal electrodiagnostic examination of the right upper limb.
1. There is no evidence of an entrapment/compression neuropathy involving the median nerve across the right wrist or forearm segments.
2. There IS evidence of an entrapment/compression neuropathy involving the ulnar nerve across the elbow segment. Upon inching with the elbow fully flexed, the nerve is in a fully subluxed position. There is a focal area of slowing noted at the distal aspect of the epicondylar groove of the humerus. There is no current focal conduction block, acute or subacute motor axon degeneration. There has been a mild degree of chronic motor axon degeneration due to this compression site.
3. There is no evidence of an acute or significant chronic right C5-T1 cervical radiculopathy or plexopathy.

**Assessment**: Cubital tunnel syndrome (right confirmed on EMG, left by history and exam); Low back pain

**Plan:**
1.  No pushing, punching, pulling, lifting or fighting.

2. Advise that patient continue with tylenol for pain, would like patient to start taking toradol 10mg PO every 6 hours for pain.  Patient was previously on lyrica for neuropathy with success.  Would advise that this is resumed for patient's comfort.

3. Please provide patient with thick mattress and extra pillow for comfort in neck and back.

4. Patient would greatly benefit from formal PT/OT for core strengthening, nerve gliding in neck and extremities, strengthening, modalities, and a home program.  PT/OT will also provide him with an elbow extension splint to wear at night.  Please ensure he has access to this once he has it.  Would consider cubital tunnel release depending on improvement or lack of improvement of symptoms with PT/OT.

5. **X-rays on return:** no

6. Should inmate be released prior to next appointment, they may call 303-602-1590 or present to the orthopedic outpatient clinic to schedule an appointment.


This patient was reviewed and discuss with Dr. Banegas who is in agreement with the aforementioned assessment and plan.


Today I spent 30 minutes with the patient and 25 minutes of that time was spent counseling.


Kayla Robles, PA-C
Department of Orthopedics
Hand and Microvascular Surgery
Electronically signed by Kayla A Robles, PA-C at 5/21/2017 10:19 PM



Office Visit on 5/19/2017

*Leon Barrow*

P.O. Box 1108
Denver, CO 80201
Inmate#:753952
DSD Reference#:16-01396

April 7, 2017

**Subject: Grievance 16-01396**

CC: Governor Hickenlooper; Mayor Hancock; Sheriff Firman; Chief Oliva; Major Guerrero; Major Blair; Captain Hall; Captain Rolando; Captain Juranek; Sergeant Brown; Safety Manager O'Malley; Deputy Manger Vigil; Office of the Independent Monitor Mitchell; Director, Denver Office of Disability Rights/ADA Coordinator, Dr. Rosseau; Denver Health Risk Management, Robin Wittenstein.

In accordance with The Denver Sheriff Department (DSD) Inmate Handbook; (TD400_hndbk effective: May 2, 2014), page #11, sub-point #4, the underlying constitutes the formal grievance procedure. The following statement details the acts and conditions giving rise to this grievance.

Since November 21, 2016, I, Leon D. Barrow, have been an inmate of DSD. Three weeks prior to incarceration, I lie in Swedish Medical Center recovering from invasive spinal surgery. Five days were spent post operatively, as a patient of the Hospital. During which, I was scheduled to appear in Denver County Courtroom 3A for sentencing. Unable to appear under medical incapacitation, the date was set over for November 21, 2016. Prior to the new date, on November 2, 2016, the court made an inquiry through private counsel, regarding DSD's ability to provide accommodations to my recovery. The answer to the inquisition yielded what is the beginning of the grievance at hand.

Post effects of surgery include; impaired balance, and decreases in endurance, mobility and range of motion[1], all of which are common after this type of procedure. Early on, I incurred multiple traumas to the surgical site during the fragile stages of recovery. Cumulatively, these incidents led to a four (4) day inpatient stay at the Correctional Care Medical Facility (CCMF), in the Denver Health Medical Center (DHMC). During this time, I underwent repeated X-rays, MRIs, and CT scans. The combined effects of each incident are shown to have exacerbated the condition of my entire spine, in just four days. Noted on November 25, 2016 complete cervical, thoracic, and lumbar spine impressions; are new degenerative and post-surgical changes to the cervical and lumbar discs[2].

---

1    Physical Therapy Initial Evaluation by Amy Marr, PT, DHMC Date of Service: 11/24/2016 at 10:20 AM. Physical Therapy Assessment by Katherine E. Ogle, PT, DPT. DHMC Date of Service: 11/26/2016 at 10:36 AM.

2    Discharge Summaries Complete Mri Impression, Result Date: 11/25/2016 by Julie A. Taub, MD, (Breckenridge Medicine Service) Date of Service: 11/26/2016 at 4:59 PM

EXHIBIT: 12

Page 2/4

Due to the nature of two of the multiple incidents occurring in private showering units and being unwitnessed by surveillance cameras, they are said to have been 'fabricated'. These factors address matters in which I am shortly to relate. CCMF Attending Physician, Julie Taub was the first to note concern malingering in her November 26, 2016 discharge summary. The contradictory and prejudice assumption of malingering, came the same day Dr. Taub noted new degenerative changes, indicated in November 25, 2016 complete spine impression! Dr. Taub tailored a summary to defend her narrative, denying treatment of new injuries, and in justification of an impromptu discharge.

DCOJL medical staff operates under the banner of DHMC. The behaviors mentioned thus far, are glaringly noticeable in the county jail setting. Primary example; Dr. Christian Stob is the DCOJL provider tasked with the treatment of my chronic condition. Dr. Stob notes on November 28, 2016, two (2) days after discharge from CCMF, that he has reviewed my medical records. He goes on to note, of the three (3) MRIs in the previous week, all were negative for changes[3]. As indicated in the complete spine Mri, this is incorrect. Dr. Stob plagiarized sections of, Dr. Taub's discharge summary. And in similar fashion, constructed a narrative in what results to inadequate health care. Had my medical records been diligently reviewed, Dr. Stob would find his notes inconsistent with the most recent imaging impressions done on November 25, 2016. When confronted with questions regarding the disparity between my medical records, Dr. Stob's passive-aggressive refusals to address these matters end by terminating the visit without assessment nor treatment[4]. This is one of several instances of blatant negligence I have experienced since November 21, 2016.

Falsifying official medical documents has sullied each of my endeavours to obtain adequate medical care. In matters of the courts, judges rely on accurate medical information from jail officials when assessing an inmates confinement. The beguiling commentary from jail personnel has led to the undermining and ultimately denial, of my efforts. Similarly, investigations by The Office of the Independent Monitor (OIM), Internal Affairs Bureau (IAB), and The Agency for Human Rights-Denver Office of Disability Rights (ADA), have led to inabilities to assist given disinformation. The results of these falsities are present in the responses from the respective agencies where officials state - medical information was reviewed[5], and interviews with multiple personnel providing services at DCOJL were conducted[6]. However, email correspondence at 10:30 AM on April 6, 2017, from IAB's Major Jodi Blair to DSD's Sergeant Lombardi, revealed the supposed investigation into my matters was never actually conducted as stated by IAB. This admittance is therefor, inconsistent with IAB's letter in response to my initial complaint dated February 8, 2017.

---

3   Denver Sheriff Health Services. Problem Oriented Record Progress Note, by Dr. Christian Stob Date of Service: 11/28/2016.

4   Denver Sheriff Department Inmate Grievance Form historical Ref: 15-21511, 15-22092, 16-001394.

5   Re: Complaint Letter Dated: February 1, 2017 by Major Blair DSD Administrator Internal Affairs and Civil Liabilities Bureau Dated: 2/8/2017.

6   Re: ADA Letter by Dr. Aisha Rousseau, Ph.D., CRC, Director, Denver Office of Disability Rights/ADA Coordinator Dated: 3/17/2017.

Page 3/4

More poignant, is the severe pain and constant discomfort I have been living with for five (5) months. Recovering from a spinal surgery in a conducive setting can be an arduous task. Attempting to do so in a volatile environment, compounded by new injury, while under false pretenses set forth by medical staff, is inconceivably difficult. The divisive rhetoric used by professional caregivers has created a chasm on the road to rehabilitation, as well as jeopardized my long-term overall health. The inadequacy of health care has directly contributed to the irreversible degeneration of one of the most vital parts of the human anatomy .

The bridge over such a chasm requires humane values, and lies within timely remedy. DSD and DHMC have fostered an atmosphere of disingenuousness and distrust, in my unique case. The facts herein necessitate a continuum of care outside of DCOJL. DSD's Alternative Sentencing Programs such as Sheriff Home Detention, are operated under discretionary provisions. Provisions which include medical treatment. This statement of details clearly illustrates a model example of when and why DSD should exercise its' discretionary power. I am not attempting to avoid serving my sentence or escape accountability of my civic debt rather, evade further disability for the remainder of my life in which I will not be an inmate. Inclusion into SHD will not reverse the affects I have sustained however, it may mitigate said affects by acknowledging the need of adequate medical care, and enabling me to obtain this necessity.

Respectfully,

Mr. Leon Barrow

Page 4/4

# CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and correct copy of the foregoing document via the United States Mail, first class postage pre-paid to the following recipients:

## Recipients

Governor Hickenlooper
Office of The Governor
136 State Capital Building
Denver CO, 80203

Mayor Michael Hancock
1437 Bannock St. Rm# 350
Denver, CO 80202

Office of The Sheriff
Sheriff Firman
P.O. Box 1108
Denver, CO 80201

Denver Sheriff Dept. Chief Oliva
P.O. Box 1108
Denver, CO 80201

DSD Major Guerrero
P.O. Box 1108
Denver, CO 80201

Denver Sheriff Department
Internal Affairs Bureau
Major Blair
5440 Roslyn Street
Bldg. 5, Suite 303
Denver, CO 80216

Denver Sheriff Department Captain Rolando
P.O. Box 1108
Denver, CO 80201

Denver Sheriff Department Captain Juranek
P.O. Box 1108
Denver, CO 80201

Denver Sheriff Department Captain Hall
P.O. Box 1108
Denver, CO 80201

Denver Sheriff Department
Internal Affairs Bureau
Sergeant Brown
5440 Roslyn Street
Bldg. 5, Suite 303
Denver, CO 80216

Safety Manger Stephanie
O'Malley
1331 Cherokee Street Rm#302
Denver, CO 80204

Deputy Manager Vigil
1331 Cherokee Street Rm#302
Denver, CO 80204

Office of the Independent Monitor
Mr. Mitchell
Wellington Webb Municipal Office Bldg.
201 W. Colfax Ave. Dept. 1201
Denver, CO 80202

Denver Office of Disability
Rights/ADA Coordinator Dr.
Aisha Rosseau
Wellington Webb Municipal Office Bldg.
201 W. Colfax Ave. Dept. 1102
Denver, CO 80202

Denver Health Risk Management,
Robin Wittenstein
660 Bannock St. MC 5015
Denver, CO 80204

CITY AND COUNTY OF DENVER
DENVER SHERIFF DEPARTMENT / COUNTY JAIL INFIRMARY

# RECOMMENDATIONS FOR CLASSIFICATION

It is recommended that _Barbara Abor_

INMATE NAME

BOOK # _753452_

be housed with the following considerations:

Medically Required            Inmate Request

BOTTOM BUNK . . . . . . . . . . . . . . . . . . . _Uleward to P S C_

BOTTOM TIER (NO STAIRS) . . . . . . . . . _34D_

OTHER . . . . . . . . . . . . . . . . . . . . . . . .

REASON: _____

Recommending Staff Member: _____
SIGNATURE

_12/17/16_
DATE    _1730_

Review of Status Due: _____
DATE

CC:    Inmate Medical File
       Operations

** Original to Inmate
   Legal File

CJ99 (4/95)

EXHIBIT: 13

CITY AND COUNTY OF DENVER
DENVER SHERIFF DEPARTMENT / COUNTY JAIL INFIRMARY

# RECOMMENDATIONS FOR CLASSIFICATION

It is recommended that _____ Brown Glen _____
INMATE NAME

BOOK # 753952

be housed with the following considerations:

Medically Required _____   Inmate Request _____

BOTTOM BUNK . . . . . . . . . . . . . . . . . . . _____

BOTTOM TIER (NO STAIRS) . . . . . . . . . . _____

OTHER . . . . . . . . . . . . . . . . _____ for to stay in _____

REASON: _____ Medical till stab cleius.

Recommending Staff Member: _____
SIGNATURE

DATE  12/17/16

Review of Status Due: _____
DATE

1300

CC:  Inmate Medical File
     Operations

** Original to Inmate
   Legal File

C-J99 (4/95)

EXHIBIT: 14

*Orders*

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16 24096

DPD# 753952

Book in Number 16 - 267703
(Numero de Book-in)

Date 12/21/2016
(Fecha)

Inmate Name LEON BARROW
(Nombre del Preso)

Building Location 4CA -1
*Ubicacion de edificio

Date of Birth 3-2-84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
**(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)**

Inmate Signature: Follow-on
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

REQUESTING TO SEE A PROVIDER REGARDING: MEDS, MY ROD ON THE RIGHT SIDE OF MY SPINE; & NERVE PAIN. THANK YOU.

## INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
## (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/23-16 | T 5 ⊙ -11 W - Negan No on next MD L - tolerated here till cleared by MD - A & O x 3 Cooperative - Questions answered A & O x 3 Cooperative Verbalizes understanding | MD L-1-127 B-2 Dr Sob - |

Triage Date: 12/21/16
Assessment: Urgent ☐ Routine ☐
Plan: ☒ Medical Records ☐ NKL ☐ Mental Health
Nurse Stamp:

EXHIBIT: 15.1

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO dël PRESO PARA LA AYUDA MEDICA)

16  24101

DPD# _753952_

Book in Number _16 - 267703_
(Numero de Book-in)

Date _12-26-16_
(Fecha)

Inmate Name _LEON BARROW_
(Nombre del Preso)

Building Location _4_
*Ubicacion de edificio

Date of Birth _3-2-84_
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
**(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)**

Inmate Signature: _(FOLLOW ON)_
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

I AM STILL EXPERIENCING ANEMIA ON THE TOP OF MY SURGICAL PROCEDURE. AND IS ASSOCIATED W/ NERVE PAIN. ALSO MY PAIN FROM ABOUT 1000 HRS TIL EVENING WAS IS A 9. AS WELL AS MY FELLOW MEDICAL CARDS INDICATES A RE-EVAL ON 12/27/16.

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12-28-16 1540 | Pt Just Seen today on NKL for Same - Please ✓ NKL. | P. Umbriaco RN |
| 12-28-16 1540 | S'= "I Am in Severe pain" ℅ Pain lowerback +ongoing. O: 97.5 - 89-16. 138/94. lowerback Site of SX. c̄ slight amt puffyness / Edema ⊕ Site Pt Ambulating slowly Pt Stated he would like to go back to dorm NO ℅ Numbness tingling in limbs. A/P: Pt on MDL this week Penn R. RN | C. Bean NP 1/4/17 P. Umbriaco RN |

Triage Date: _12/26/16_
Assessment: Routine ☐  Urgent ☐
Plan: ☐ NKL  ☐ Medical Records  ☐ Mental Health
Nurse Stamp: _Kasugu RN_

EXHIBIT 15-2

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16 24106

DPD# 753952

Book in Number 16-267703
(Numero de Book-in)

Date: 2-27-2016
(Fecha)

Inmate Name LEON BARROW
(Nombre del Preso)

Building Location 4
*Ubicacion de edificio

Date of Birth 3-2-84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature: _____ (FOLLOW ON)
(firma de Preso)

Nature of medial complaint or request:
(La naturaleza de la queria medico o solicita):

PAIN LEVEL IS CONSISTENTLY AT A 9, EVEN AFTER 2 TYLENOL. ADEQUATE PAIN MANAGEMENT ASSESSMENT IS NEEDED. I WAS MOVED TO MEDICAL, YET HAVEN'T SEEN A DR. IF I AM CONSIDERED A RISK, WHY HAVEN'T I SEEN A PROVIDER?

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 12/29/16 0917 DEC 27 PM 9:36 | Im. states 9/10 pain — c tylenol and Ibuprofen for pain management — will notify provider in house c Ims Concerns. Im to remain on MDL and med 4 till cleared by MD only — safety issues addressed understands noted Im Calm and respectful — ambulates slow — fast step — no falls noted — Montoya LPN | mDC 1-12/17 Montoya LPN C. Bean NP 1/4/17 |

Triage Date: R/27/16
Assessment: Urgent ☐
Routine ☐
Plan: ☒ Medical Records ☒ NKL ☐ Mental Health
Nurse Stamp: Montoya RN

N/S

# DENVER SHERIFF DEPARTMENT
## INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  24107

DPD# 753952

Book in Number 16- 267703
(Numero de Book-in)

Date 12-27-16
(Fecha)

Inmate Name LEON BARROW
(Nombre del Preso)

Building Location 4
*Ubicacion de edificio

Date of Birth 3-2-84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature: _____ (FOLLOW UN)
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

BECAUSE THERE IS NO BASELINE FOR THE EDEMA IN/AT MY SURGICAL SITE, I'D LIKE THAT TO BE DETERMINED AS I AM STILL ABNORMALLY SWOLLEN AT THE TOP OF MY LUMBAR DISC. PAINFUL TO THE TOUCH. PAIN LEVEL = 9.

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| DEC 27 PM 9:36  12/29/16 1030 | Im states 9/10 pain c̄ tylenol and Ibuprofen for pain management. will speak with provider regarding Im concerns/complaints. as the MD in house will only be notified of Ims "stated "Poor pain control/management," will keep Im on MD line as ordered - and evaluate as needed - S. Montoya LPN   Inmate calm - respectful c̄ under standing noted S. Montoya LPN   Im ambulates slowly ⊘ falls noted - | · 1/2/17 - MDL   S. Montoya LPN ✓ |

Triage Date: 12/27/16
Assessment: Routine ☒ Urgent ☐
Plan: ☐ Medical Records ☐ NKL ☐ Mental Health
Nurse Stamp:

## DENVER SHERIFF DEPARTMENT
### INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16 24104

DPD# 753952

Book in Number 16-26 7703
(Numero de Book-in)

Date 12/28/2016
(Fecha)

Inmate Name LEON BARROW
(Nombre del Preso)

Building Location 4
*Ubicacion de edificio

Date of Birth 3-2-84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
(Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

**Inmate Signature:** ~~(FOLLOW-ON)~~
(firma de Preso)

**Nature of medical complaint or request:**
(La naturaleza de la queria medico o solicita):

PAIN LEVEL @ 2030 IS A (10) IN MY LOWER BACK!
THIS IS AFTER EVENING MEDS. PAIN MANAGEMENT NEEDS
TO BE DISCUSSED AS SOON AS POSSIBLE.

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| | 12-30-16 1000 – Req med eval c̄ mg for his pain – States he felt a pop while doing his exercise from PT @ 4P – now c̄/o pain in his back A&O x3 conversations – makes slow but deliberately – Verbalizes Understanding | MD appt pending Chart review for pain meds |
| | (illegible) | |
| | 12/30/16 1240 Spoke c̄ Martinez regarding his c/o his back popping while doing PT Exercise when seen this AM c/o back popping – c̄ PT exercise – Walk to Station in building 4 – gait slow + steady safer c̄ pain slow + deliberate slowly up + Walked back to cell c̄ difficulty no c/o or seen incontinent | Needs to ↓ PT until back feels better – Discussed c̄ Dr Crum re: new orders. Delete... Discontinue Naproxyn Voltaren 50 mgs BID c̄ DDR... |

C. Bean NP (illegible) 1/R/17

DEC 29 AM 11:32

Triage Date: 12/28/16
Assessment:
Routine ☐   Urgent ☐
Plan: ☐ Medical Records  ☐ NKL  ☐ Mental Health
Nurse Stamp: Kartuzy RN

## DENVER SHERIFF DEPARTMENT
### INMATE REQUEST FOR MEDICAL ASSISTANCE
### (EL PEDIDO del PRESO PARA LA AYUDA MEDICA)

16  24123

DPD# 753952

Book in Number 16·267903
(Numero de Book-in)

Date 1·4·16
(Fecha)

Inmate Name LEON BARRON
(Nombre del Preso)

Building Location 4
*Ubicacion de edificio

Date of Birth 3·2·84
(Fecha de Nacimiento)

### I understand a clinic fee of $7.00 will be charged to my account
#### (Entiendo que un honorario de dispensario de $7,00 sera Cargado a mi cuenta)

Inmate Signature _(signature)_ (FALLOWUP RAY)
(firma de Preso)

**Nature of medial complaint or request:**
(La naturaleza de la queria medico o solicita):

MY PAIN IS AT A (10) AFTER 2 TYLENOL TAKEN @ 0530.
I AM EXPERIENCING BI-LATERAL NUMBNESS & TINGLING
IN BOTH LEGS. REQUESTING NON-EMERGENT MEDICAL
CARE IMMEDIATELY.

### INMATE: PLEASE DO NOT WRITE BELOW THIS LINE
### (PRESO: POR FAVOR NO ESCRIBA DEBAJO DE ESTA LINEA)

| DATE/TIME | SUBJECTIVE/OBJECTIVE/ASSESSMENT | TREATMENT PLAN |
|---|---|---|
| 1-4-17. 1350 | Pt Seen for this Above issue today by NP- Rivera | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Triage Date:

Assessment:
Routine ☐    Urgent ☐

Plan: ☐ Medical Records
☐ NKL
☐ Mental Health

Nurse Stamp:

Crum

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
### (Formulario de queja)

15 21511

Time stamp - Do not write in this area

NAME: _Leon Barrow_  CD#: _753932_  LOCATION: _24 D_
(Nombre)                                              (Ubicación)

DATE AND TIME OF INCIDENT: _12/15/16 @ 1015 HRS_
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: This grievance is in
(Declaración detallando el acto o condición que da lugar a la queja)
reference to a provider visit I had with Christian Stob.
I have grieved numerous times to no avail regarding chronic
spinal related incidents & the comparison of my post-op intakes. The
images after each successive incident occurring on form 11-21 & on
11-26-2016. After having to speak with Captain Sims, I was finally
able to address my very obvious concerns with provider Stob. He was
immediately dismissive in my conveyance of my concerns. Relating to a
previous photos & failed to address what each of those consecutive
grievances have contained in similarity. Then when confronted with
my concern(s): A- there are no records of Denver Health obtaining x-rays, post-
operative; B- my mattress is defective at an abnormal angle; C- my walker
& wheelchair are both faulty & inoperative & therefore unsafe. I.e. for
rebutting my questions & remarks with comments such as, "I know what
you're trying to do", at that moment, Stob neglected to conduct as a
feasible unbias(ed) with a patient. My views weren't taken, my few were not

SPECIFIC REMEDY SOUGHT: I immediately request adequate wheelchair, appropriate
(Remedio específico inquirido)
cot and a wheelchair with all the equipment attached & operative times.
A new mattress without the obvious inmate unrest situations that may occur
at here immediately. For allowing me to operate with faulty equipment.

STAFF MEMBER ANSWER: 12/30  Mr Barrow has been seen, evaluated and
(Respuesta por un miembro del personal) treated appropriately by the DDC and DHMC
medical staff. His equipment is fully functional.
                                                    12

STAFF MEMBER ANSWERING            BADGE # / CIVILIAN #              DATE OF RESPONSE
(Contestador miembro del personal)  (Número de placa / insignia / Número de empleado civil)  (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: _____    INMATE'S SIGNATURE: _____
(Fecha de envío)                                (Firma del recluso)
RECEIVED BY: _____    DATE RECEIVED: _____
(Recibido por)          Print Name          Badge # / Civilian #  (Fecha recibida)
ASSIGNED TO: _Medical Supervisor_         DATE: _12-31-2016_
(Asignado a)                                          (Fecha)

DSD 2015        COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

EXHIBIT: 16.1

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

15 21512

NAME: LEON BARCAN   CD#: 753952   LOCATION: AD SEG / MEDICAL
(Nombre)                                           (Ubicación)

DATE AND TIME OF INCIDENT: 12·10·16   THERE ARE NO CLOCKS
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: AFTER MEETING WITH
(Declaración detallando el acto o condición que da lugar a la queja)
PROVIDER CHRISTIAN STAB ON 12·15·16, I WAS ENCOURAGED TO CONTINUE
ON WITH THE FULL CARE PLAN ENACTED BY PA-C TIMOTHY G. RUSSEL ON
12·5·16. A PLAN THAT CONSISTS OF WALKING AS MUCH AS POSSIBLE. ON
12·15·16 I WAS REMOVED FROM "POD5" WHICH I WAS ALSO CLEARED FOR
FOR NO APPARENT REASON. TO DATE, I HAVE BEEN GIVEN NO EVALUATION
FOR THE REGRESSION OF MY FULL CARE PLAN. I HAVE BEEN PLACED IN
24 HOUR LOCK DOWN WITHOUT ACCESS TO MD'S OR NURSES. I CURRENTLY
BEING HOUSED AS IF I HAVE VIOLATED A RULE IN THE INMATE HANDBOOK.
I HAVE NOT BEEN GIVEN ANY TIME TO WALK, NOR MY WALKER WHICH
I AM AUTHORIZED. THIS REGRESSION WITHOUT VIOLATION 3 EVALUAT-
ION IS INFACT 4 VIOLATING OF MY INMATE RIGHTS. I HAVE ASKED TO
SPEAK NUMEROUS TIMES TO SGT'S 3 MEDICAL STAFF TO NO AVAIL. WHY
WERE THE PROVIDERS APPT ON 12·15·16 WAS I ENCOURAGED TO CONTINUE MY
FULL CARE PLAN, ONLY TO BE REGRESSED FROM IT 3 RECEIVE NO
PUNISHMENT GIVEN MY CURRENT STATUS? [illegible]

SPECIFIC REMEDY SOUGHT: I WISH TO SPEAK WITH THE INDIVIDUAL(S) RESPONSIBLE
(Remedio específico inquirido)
FOR MY REGRESSION ON AN IMMEDIATE BASIS. I WANT TO KNOW WHY I AM
BEING PUNISHED FOR FOLLOWING REGIMEN INSTRUCTED. TO LIKE IMMEDIATE
RELEF FROM THE RESTRICTIVE ENVIRONMENT WHICH I HAVE BEEN PLACED
WITHOUT MY PROPER CAUSE.

STAFF MEMBER ANSWER: This is a duplicate complaint. You
(Respuesta por un miembro del personal) Contacted IAB on 12/28/2016 regarding this same
issue.

_Sgt Osorio_                    S03017                    12·29·2016
STAFF MEMBER ANSWERING         BADGE # / CIVILIAN #       DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / insignia / Número de empleado civil)   (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: 12·28·16   INMATE'S SIGNATURE: _____
(Fecha de envío)                  (Firma del recluso)

RECEIVED BY: _____          _____   DATE RECEIVED: 12·28·16
(Recibido por)    Print Name    Badge # / Civilian #   (Fecha recibida)

ASSIGNED TO: _Sgt Osorio_                    DATE: 12·29·2016
(Asignado a)                                 (Fecha)

DSD 2015         COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Time stamp – Do not write in this area

15 16377

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
### (Formulario de queja)

NAME: Leon Bacon  CD#: 752952  LOCATION: "Medical"
(Nombre)                                    (Ubicación)

DATE AND TIME OF INCIDENT: 12/27/2016    1025 HRS
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: For 12 Days now, I
(Declaración detallando el acto o condición que da lugar a la queja)
have been housed in what the sheriffs department are calling medical.
I have received no treatment for a recent knee surgery on
10/31/2016. After 12/16/2016's hospital trip I have not seen a provider.
I have 2 separate orders, one from denver health & one
hospital which clear me to return to bed & work or ambulate
as needed. However, after (4) injuries & a spinal fusion I have been
required to transport people who have incontinently passed onto my chair.
I am locked down 23 hours of the day. unable to go anywhere.
9 different dr's have instructed me to go further. Most I have
been subjected to the exact same disciplinary protocals as an
individual in adseg. Also while being called a "nigger" on
three occasions. housed (illegible) for
disciplinary reasons. This is cruel & unusual punishment as I am not disruptive
and medically restricted. I have not accrued any rules infractions
under the 37th amendment. This is cruel & unusual punishment.

SPECIFIC REMEDY SOUGHT: A provider appointment and am charged with $3.00
(Remedio específico inquirido)
as I was brought down here to here the purportly and my
mental anguish, able to go treatment.

STAFF MEMBER ANSWER:
(Respuesta por un miembro del personal)

STAFF MEMBER ANSWERING          BADGE # / CIVILIAN #          DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / insignia / Número de empleado civil)   (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: 12.27.16      INMATE'S SIGNATURE:
(Fecha de envío)                (Firma del recluso)
RECEIVED BY: Ruoll.            Susuns    DATE RECEIVED: 12.28.16
(Recibido por)      Print Name         Badge # / Civilian #   (Fecha recibida)

ASSIGNED TO: Capt Rolando                DATE: 12.29.2016
(Asignado a)                                  (Fecha)
        Received  12-30-16

DSD 2015          COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

15 25276

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

NAME: Leon Barrow                    CD#: 753952        LOCATION: Admin. Seg.
(Nombre)                                                          (Ubicación)

DATE AND TIME OF INCIDENT: 12-27-16
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: After speaking with
(Declaración detallando el acto o condición que da lugar a la queja)
staff members who've attempted to clear up this medical hold. I was told that the reason I am being
held in medical is I am supposedly/evidently in a "Density match" with either Dr. Stahl and/or Dr. Kraus, that is a
quote, regardless if I have yet to see a single provider in two (2) weeks especially after 12-16-2016's hospital stay in University. I am inclined to believe this supposedly "this is Punitive & not medical. Dr. Stahl is who originally cleared me for G.P. on 12-15-16, & even when He mentioned that I was going to return his Poo program, I asked you who can verify this along with the self physical therapy I was doing, so why was no hold and I would it be returning, either way, Personal reasons "spoke to Major Oviedo @ 1445 here's while I'm still writing this & no appointment".

SPECIFIC REMEDY SOUGHT: Return to my previous pod wherever I
(Remedio específico inquirido)
may execute my full care plan from two (2) separate entities, and the medical hold, be able to

STAFF MEMBER ANSWER: Duplicate Complaint. You contacted TAB
(Respuesta por un miembro del personal)
on 12/28/2016 regarding this same issue.

_____                 SO3017                 12.28.2016
STAFF MEMBER ANSWERING              BADGE # / CIVILIAN #           DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / insignia / Número de empleado civil)  (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: _____   INMATE'S SIGNATURE: _____
(Fecha de envío)                            (Firma del recluso)

RECEIVED BY: _____                 _____   DATE RECEIVED: 12.28.16
(Recibido por)          Print Name        Badge # / Civilian #   (Fecha recibida)

ASSIGNED TO: _____                                DATE: 12.28.2016
(Asignado a)                                                    (Fecha)

DSD 2015              COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Time stamp – Do not write in this area

15 16370

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

NAME: Leon Barlow
(Nombre)

CD#: 753952

LOCATION: 4
(Ubicación)

DATE AND TIME OF INCIDENT: 12-28-16
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: I am grieving being
(Declaración detallando el acto o condición que da lugar a la queja)
on another staff member confirmed that I'm being _____
based on previous reading same member again stated "While I _____
have been on a dying context, staff member also gave _____
they will inform care reviews. This is gross misconduct + an _____
obvious deliberate indifference in both of nine (9) _____
PA's MN's 3. Someone have a documented a full care plan which is _____
not being adhered to in the slightest. My _____ is a _____ a 9, _____
yet all appointments which he was at ___ to being seen _____
15 minutes ___ for more _____ any consultation with Mrs. P. _____
there is not ___ in ___ with the actions of _____ alone ___ _____
especially it's ___ doctor who discover he from medical and ___ _____
per orthopedic surgeon Timothy G. Russell who provided me with _____
a full care medical plan that plan says nothing about placing me ___ _____
observation for 23 hours on what my mobility. The ___ is a _____
direct violation of the 8th amendment of cruel + usual as my People _____

SPECIFIC REMEDY SOUGHT: As my _____ my 8th compromised by the placing
(Remedio específico inquirido)
3 subordinate staff I ___ immediate care outside Denver ___ _____
continuum of care + _____ as SHO as soon as ___. I am _____
respectfully _____ these ___ in lieu of Alternate _____
_____ Timothy G _____

STAFF MEMBER ANSWER: *Duplicate Grievance to 15-25283 and*
(Respuesta por un miembro del personal) *15-25287*

STAFF MEMBER ANSWERING          BADGE # / CIVILIAN #          DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / insignia / Número de empleado civil)   (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: _____          INMATE'S SIGNATURE: _____
(Fecha de envío)              (Firma del recluso)

RECEIVED BY: _____
(Recibido por)          Print Name          Badge # / Civilian #

DATE RECEIVED: _____
(Fecha recibida)

ASSIGNED TO: Sgt Ow200          DATE: 1-4-2017
(Asignado a)                    (Fecha)

DSD 2015          COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Time stamp – Do not write in this area

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

15 25207

NAME: _Leon Carlock_
(Nombre)

CD#: _153953_     LOCATION: _4-4-23_
(Ubicación)

DATE AND TIME OF INCIDENT: _1.1.17_
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: _Since the 15th of_
(Declaración detallando el acto o condición que da lugar a la queja)
_December 2016 I've been hounded in some of the personnel_
_behind the denial around medical compliance protocol. In the_
_nearly 3 weeks I have been hounded while I attempt to_
_speak to a medical provider those who have overseen the_
_care of my complaints have already been reprimanded, 3 reports_
_within 5 days. Each time this person I was housed as a result_
_detailed with a_ ~~illegible~~ _... I've not_
_been assigned care by days and being hounded. I am not_
_emptying physical therapy in medicine by university Ho-_
_pital, yet have no due if I should be due to zero claim_
_w/ a provider. I do not attempt any of my refuse_
_session (on) staff would be asked it is not yet my de-_
_manded was_ ~~illegible~~ _... throughout the_
~~illegible struck through~~
_housed in pod 4._

SPECIFIC REMEDY SOUGHT: _I wish to speak PERSONALLY with an MD_
(Remedio específico inquirido)
_3 an officer regarding this OBVIOUS_ ~~illegible~~ _my over-_
_sight regarding my healthcare 3 housing status_
_at the facility pass time_

STAFF MEMBER ANSWER: _Duplicate Grievance to 15-25283_
(Respuesta por un miembro del personal)
_You shall submit only one grievance regarding_
_the same complaint/Issue._

_Sgt Osorio_     _Se 3017_     _1.4.2017_
STAFF MEMBER ANSWERING          BADGE # / CIVILIAN #          DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / insignia / Número de empleado civil)   (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: _1.1.17_     INMATE'S SIGNATURE: _[signature]_
(Fecha de envío)     (Firma del recluso)

RECEIVED BY: _D. Larkins_ _Larkins_     _Se 3024_     DATE RECEIVED: _1-1-17_
(Recibido por)          Print Name          Badge # / Civilian #     (Fecha recibida)

ASSIGNED TO: _Sgt Osorio_     DATE: _1.4.2017_
(Asignado a)          (Fecha)

DSD 2015          COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Crum

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

15 25203

JAN 9 PM 8:51

Time stamp – Do not write in this area

**NAME:** Leon Bacon
(Nombre)

**CD#:** 1530052

**LOCATION:** 4
(Ubicación)

**DATE AND TIME OF INCIDENT:** 1-2-17
(Fecha y hora del incidente)

**STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE:** Every Deputy shew
(Declaración detallando el acto o condición que da lugar a la queja)
run, some of bacon will major lead I encounter was abused on the bars in which I should not be exposed in such an environment. This place is devoid of any trained personnel. I am told to write grievances to no avail. My humpeople or life threat has been severely compromised. This has been augmented by numerous staff members. I have been subject a parol with no privacy and such liberties are often ignored/misused. The frequency & gravity of this grievous standard is supposed to adhere to per account care. Prior to Spinal surgery in my case was now known as a given so no nurse. The Rice Bar" every one now plots in which I remain choke & without the aide if I suffer a seizure. This purpose for air down... in "medical" it was so bad I was 3 weeks before seeing doctor Po or nurse Pam...

**SPECIFIC REMEDY SOUGHT:** I need help. Find any consemwarer or persons who "power" to Dr. Po on an immediate basis. Please.
(Remedio específico inquirido)

**STAFF MEMBER ANSWER:** 1/13/17 Mr Barrow was housed in the medical department given his frequent claims to be unsteady and claimed falls with new onset incontinence. He has since stated that he has not actually fallen, nor does he have new onset incontinence. He has been rehoused in general population but will return to the medical department for evaluation should he experience additional falls
(Respuesta por un miembro del personal)

**STAFF MEMBER ANSWERING:** additional falls
(Contestador miembro del personal)

**BADGE # / CIVILIAN #**
(Número de placa / insignia / Número de empleado civil)

**DATE OF RESPONSE**
(Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

**DATE SUBMITTED:** 1-2-17
(Fecha de envio)

**INMATE'S SIGNATURE:**
(Firma del recluso)

**RECEIVED BY:** D/s Kent 522018
(Recibido por)

**DATE RECEIVED:** 1/2/2017
(Fecha recibida)

Print Name    Badge # / Civilian #

**ASSIGNED TO:** Medical Supervisor
(Asignado a)

**DATE:** 1-4-2017
(Fecha)

DSD 2015    COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

EXHIBIT: No 7

Crum

| Time stamp -Do not write in this area- |
| --- |

# DENVER SHERIFF DEPARTMENT
# INMATE GRIEVANCE FORM
### (Formulario de queja)

15-25284

JAN 10 PM 10:07

NAME: Leon Bratton          CD#: 1539032          LOCATION: 4
(Nombre)                                              (Ubicación)

DATE AND TIME OF INCIDENT: 11/6/17 - 1500 HRS
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: THIS FIELD STRICTLY
(Declaración detallando el acto o condición que da lugar a la queja) Punitive as a Pretrial Detainee. Patient Rotating unit is being punished after speaking with Sgt. Sorenson Last Thurs. I was told he would reprimand officer who told me that urine at the lab is his and good to drink to the staff 3 laughed 3 right? Control room asked me 3 refused to exit the block. This condescending behavior is indicative of the lack of respect 3 have been receiving. I am no longer being given Medical kites present. Bnis are refusing them 3 can do nothing but claim to them. Re used to be seen by a doctor 3 a nurse anytime pain dictates why I am in medical.

SPECIFIC REMEDY SOUGHT: Immediate relief from this punitive
(Remedio específico inquirido) Environment. Whatever I can pursue reasonable. Please

STAFF MEMBER ANSWER: 1/13/17
(Respuesta por un miembro del personal)   See reply to 15 25283

STAFF MEMBER ANSWERING              BADGE # / CIVILIAN #                     DATE OF RESPONSE
(Contestador miembro del personal)   (Número de placa / Insignia / Número de empleado civil)   (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: 1/__/17      INMATE'S SIGNATURE: _____
(Fecha de envío)                  (Firma del recluso)

RECEIVED BY: Dls Larkins _____          DATE RECEIVED: 1-3-17
(Recibido por)        Print Name          Badge # / Civilian #   (Fecha recibida)

ASSIGNED TO: MEDICAL SUPERVISOR _____          DATE: 1-9-17
(Asignado a)                                                  (Fecha)

DSD 2015          COPIES WHITE ( JAIL RECORDS )  CANARY ( INMATE'S WITH ANSWER )  PINK ( INMATE'S IMMEDIATE )

EXHIBIT : No.8

Time stamp – Do not write in this area

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

15 25202

NAME: LEON BARROW
(Nombre)

CD#: 7 3 9 5 _

LOCATION: 4
(Ubicación):

DATE AND TIME OF INCIDENT: 1-8-0 HILS MED
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: WHILE ASKING DEPUTY
(Declaración detallando el acto o condición que da lugar a la queja):
WRIGHT TO ANSWER THE TELEPHONE SO MAY BE VIEWED BY THOSE OF
US NOT BEING HOUSED UNDER PUNITIVE SANCTIONS, I OVERHEARD HER
TELLING ANOTHER DEPUTY THAT "THIS IS CORRECTIVE HOUSING".
WHEN I CONFRONTED HER ABOUT THE COMMENT SHE RESPONDED
"DON'T LISTEN TO MY CONVERSATIONS", I PROCEEDED TO ASK IF I COULD
QUOTE HER, TO WHICH SHE RESPONDED "NO, THAT WOULD BE OUT OF LINE".
THESE VERY STATEMENTS MADE BY A SENIOR DEPUTY TO ANOTHER DEPUTY
HAVE CORROBORATE THE STATEMENTS AND OPINIONS OF COUNTLESS OTHER
STAFF MEMBERS. IT ALSO DENOTES FACTUAL BASIS AS TO ME NOT RECEIVING
ANY MEDICAL TREATMENT FOR 30 DAYS 3 THEREFORE THIS BEING PUNITIVE
RATHER THAN REHABILITATIVE. IT ALSO CORROBORATES TWO DEPUTIES
STATING MY REASONING FOR BEING HOUSED IN ROOM 4 TO BUILD A
RECORD ON ME FOR THE PURPOSES OF A LAWSUIT. CAPTAIN CHRONIC _____
_____ HONGLER, THEY HAVE _____
DR'S MAKING THESE STATEMENTS.

SPECIFIC REMEDY SOUGHT: I WOULD LIKE TO SPEAK TO MAJOR _____ TO
(Remedio específico inquirido)
HAVE _____ TO THE _____ THE _____ _____ & EXHAUST
ALL WRITTEN METHODS OF RESOLUTION.

STAFF MEMBER ANSWER:
(Respuesta por un miembro del personal)

STAFF MEMBER ANSWERING
(Contestador miembro del personal)

BADGE # / CIVILIAN #
(Número de placa / insignia / Número de empleado civil)

DATE OF RESPONSE
(Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: 1-7
(Fecha de envío)

INMATE'S SIGNATURE:
(Firma del recluso)

RECEIVED BY: D/L Brown
(Recibido por)          Print Name

S14003
Badge # / Civilian #

DATE RECEIVED: 1-8-17
(Fecha recibida)

ASSIGNED TO: Capt Jusanck
(Asignado a)          Staff Conduct

DATE: 1.90.2017
(Fecha)

DSD 2015          COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Received 1/11/17 ET          Exhibit 16 F1

Crum / Cpt. Hall

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
*(Formulario de queja)*

15 25205

JAN 19 PM 11:28

NAME: LEON BARROW    CD#: 753952    LOCATION: 4  240-403-
(Nombre)                                  (Ubicación)          12L

DATE AND TIME OF INCIDENT: 1-9-15 @ 0900
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: Due to me Being
(Declaración detallando el acto o condición que da lugar a la queja)

HOUSED IN CORRECTIONAL HOUSING INSTEAD OF WORK RELEASE
FOR WHICH I WAS AUTHORIZED I LOST MY PRIMARY
SOURCE OF INCOME AS A HOUSEPAINTER. THIS HAS SEVERLY
INCONVIENCED MY FAMILY'S AND T LIVELY-HOOD OUR MORTGAGE IS
INCOME BASED, AND THEY NOW EYE THE THREAT OF HOMELESSNESS
AGAIN. I WAS SUPPOSEDLY HOUSED IN BLDG 4 FOR MEDICAL
REASONS HOWEVER, HAVE YET TO SEE A PROVIDER IN A MONTH
FOLLOWING SPINAL SURGERY THIS HAS JUST MADE A BAD SITU-
ATION EVEN WORSE. I HAVE BEEN OVER PATIENT S THAT HAS
BEEN TO MY DETRIMENT J NOW MY FAMILIES AS WELL WHO
IS LIABLE FOR THIS?! I JUST WANTED TO DO MY TIME & HEAL
TO THE BEST OF MY ABILITY. THIS HAS TURNED INTO A PAINFUL
NIGHTMARE THAT I CANNOT WAKE FROM WHICH MY WIFE &
CHILDREN ARE NOW BEING PUNISHED FOR.

SPECIFIC REMEDY SOUGHT: I HAVE BEEN TRYING TO COMMUNICATE IN EVERY
(Remedio especifico inquirido)
CAPACITY. NOTHING HAS COME FROM FILING THESE. I WISH TO
SPEAK TO SGT. SHANNON & CAPT. HALL.

STAFF MEMBER ANSWER: 1/20/17 Mr. Barrow was housed in the medical
(Respuesta por un miembro del personal)
unit due to his complaint of falling - which
he has since stated that he no longer falls

STAFF MEMBER ANSWERING          BADGE # / CIVILIAN #                    DATE OF RESPONSE
(Contestador miembro del personal)    (Número de placa / insignia / Número de empleado civil)    (Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: 1-10-17    INMATE'S SIGNATURE: _____
(Fecha de envío)                    (Firma del recluso)

RECEIVED BY: D/s Kent  57008          DATE RECEIVED: 1/11/17
(Recibido por)    Print Name    Badge # / Civilian #    (Fecha recibida)

ASSIGNED TO: MEDICAL SUPERVISOR          DATE: 1-13-17
(Asignado a)                                        (Fecha)

DSD 2015    COPIES WHITE ( JAIL RECORDS ) CANARY (WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Time stamp – Do not write in this area

15 25286

24D-403-9

# DENVER SHERIFF DEPARTMENT
# INMATE GRIEVANCE FORM
(Formulario de queja)

NAME: Leon [illegible] CD#: [illegible] LOCATION: 443
(Nombre) (Ubicación)

DATE AND TIME OF INCIDENT: 1-11-17
(Fecha y hora del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: If it weren't [illegible]
(Declaración detallando el acto o condición que da lugar a la queja)

[illegible]

SPECIFIC REMEDY SOUGHT: [illegible]
(Remedio especifico inquirido)

[illegible]

STAFF MEMBER ANSWER:
(Respuesta por un miembro del personal)

STAFF MEMBER ANSWERING
(Contestador miembro del personal)

BADGE # / CIVILIAN #
(Número de placa / insignia / Número de empleado civil)

DATE OF RESPONSE
(Fecha de la respuesta)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si requiere más espacio, puede usar otra hoja adicional)

DATE SUBMITTED: INMATE'S SIGNATURE:
(Fecha de envio) (Firma del recluso)

RECEIVED BY: D/S D. [illegible] S-3-56 DATE RECEIVED: 1-11-17
(Recibido por) Print Name Badge # / Civilian # (Fecha recibida)

ASSIGNED TO: SGT. SANFORD STAFF CONDUCT DATE: 1-24-17
(Asignado a) (Fecha)

GENERAL

DSD 2015 COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

EXHIBIT [illegible]

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 Bannock Street, Rm 256, Denver, CO, 80202 | DATE FILED: June 6, 2017 |
| **Plaintiff(s)** LEON BARROW<br>v.<br>**Defendant(s)** DENVER SHERIFFS DEPT IN ALLIANCE WITH DE | |
| | △ COURT USE ONLY △ |
| | Case Number: 2017CV154 |
| | Division: 414          Courtroom: |
| **ORDER OF DISMISSAL** | |

This matter comes before me sua sponte.

Plaintiff failed to comply with the Court's Notice of Pending Dismissal issued on May 15, 2017.  Therefore, this case is DISMISSED without prejudice.

Issue Date: 6/6/2017

ROBERT LEWIS MCGAHEY JR.
District Court Judge

EXHIBIT :17